THE STATE OF OHIO, APPELLEE, *v.* DAVIS, APPELLANT.

110

(No. 53986 — Decided June 20, 1988.)

*John T. Corrigan,* prosecuting at-
torney, and *Paul J. Myles,* for appel-
lee.

*Daniel B. Wolf,* for appellant.

KRUPANSKY, J. Defendant, James
E. Davis, a.k.a. Edward J. Davis, was
indicted by the Cuyahoga County
Grand Jury in case No. CR-211657 on
one count, *viz.,* receiving stolen prop-
erty in violation of R.C. 2913.51 with
violence specification. The indictment
also alleged defendant had been con-
victed of two prior theft offenses: rob-
bery in violation of R.C. 2911.02 and
receiving stolen property in violation
of R.C. 2913.51.

Defendant was found guilty in a
jury trial of receiving stolen property
valued at less than $300 in violation of
R.C. 2913.51. The trial court accepted
a stipulation and found beyond a
reasonable doubt defendant had been
previously convicted of robbery in
violation of R.C. 2911.02, an offense of
violence, and receiving stolen property
in violation of R.C. 2913.51. Defendant
was sentenced to an indefinite term of
three to fifteen years. Verdict and
sentence were journalized May 20,
1987. Defendant filed timely notice of
appeal.

The evidence at trial follows:

On June 8, 1986 defendant and
James Massey, who are engaged in the
scrapping and hauling of metals and in
the business of doing odd cleanup jobs,
observed two unidentified black males
pushing a shopping cart on East 49th
Street near Fleet Avenue. The cart
contained used brass water meters
stolen from the city of Cleveland
Water Department's Harvard Yard.
Defendant and Massey, who were
riding in a pickup truck, offered to help
the black males haul the meters to
Lake City Scrap yard located on East
55th Street in exchange for gas money.
When the four of them arrived at the
scrap yard, they discovered it was
closed. Defendant then purchased the
water meters from the two black males

for $20. The next day defendant and Massey sold the water meters as scrap to Scrap Mart located at 3335 West 65th Street, Cleveland, Cuyahoga County, Ohio.

An employee of the Scrap Mart, Rueben Freund, testified he weighed the brass after defendant and Massey had put the brass in a barrel and determined it weighed two hundred sixty pounds.[1] He then purchased the meters from defendant and Massey for $65. Freund further testified although defendant occasionally brought scrap to Scrap Mart, at that time he only knew defendant's first name. Furthermore, Freund testified he did not know the brass defendant and Massey had placed in the barrel consisted of water meters. Freund also testified he did not know the brass belonged to the city of Cleveland.

Both defendant and Massey also testified they did not know the brass consisted of water meters and did not know the meters belonged to the city of Cleveland. Defendant and Massey also testified they often see people walking down the street pulling or pushing carts and wagons containing scrap. They further testified they are aware stolen merchandise is often sold as scrap.

Detective Thomas Smith is a twenty-eight-year veteran of the Cleveland Police Department who, for the past three years, has been a member of the Fraud Unit. He testified he is assigned to investigate scrap yards located in the city of Cleveland. On June 13, 1986 he went to Scrap Mart and noticed a barrel filled with brass water meters. He recorded the serial number of one meter which was later determined to be the property of the city of Cleveland Water Department. Upon receiving information this

meter was stolen, Smith returned to Scrap Mart and recorded the serial numbers on the remaining meters. Of the sixty-nine meters found in the barrel, forty were determined to be stolen. Freund promised Smith he, Freund, would obtain the license plate number of defendant's vehicle the next time defendant went to the Scrap Mart.

The license plate number revealed defendant was driving a vehicle belonging to Ms. Tammy McArdo. Smith was initially unable to obtain an address for McArdo. Smith, therefore, decided to run a computer check to determine if McArdo had filed any complaints in the recent past.

The computer check revealed McArdo had recently filed an arson complaint alleging defendant had set fire to her vehicle. Smith's testimony revealed defendant was never indicted or tried for this arson offense. Smith then obtained a photograph of defendant and, along with four or five other photographs of males with similar characteristics, made a photographic array. Smith then took this array and showed it to Freund. Freund identified defendant from the array.

Willie Chambers, Chief of Security for the Cleveland Water Department, testified there had been an ongoing theft problem from the Harvard Yard. The ongoing theft of used brass water meters, which are warehoused at the Harvard Yard before being scrapped, had been under investigation for eighteen months. In addition, Chambers testified the meters *sub judice* had been placed in storage between April 4 and June 6, 1986.

Defendant and Massey were both asked to read writing contained on state's exhibit one, one of the water meters. They both testified the meter read as follows: "American Water

---

[1] Both Smith and Willie R. Chambers, Chief of Security at the Cleveland Department of Water, testified the barrel of meters weighed between six hundred and eight hundred pounds. Massey testified he believed the meters weighed approximately two hundred fifty pounds.

Meter, Buffalo Meter Company, Buffalo, New York, U.S.A." Defendant and Massey had denied knowledge that the property consisted of water meters even though the words "water meter" were stamped on the stolen property.

Assignment of error number one follows:

"The jury verdict is against the manifest weight and sufficiency of the evidence and should be reversed because it violates the Fourteenth Amendment of the U.S. Constitution's Due Process Clause."

Assignment of error number one lacks merit.

R.C. 2913.51, receiving stolen property, provides:

"(A) *No person shall receive, retain, or dispose of property of another,* knowing or *having reasonable cause to believe that the property has been obtained through commission of a theft offense.*

"(B) *Whoever violates this section is guilty of receiving stolen property.* If the value of the property involved is less than three hundred dollars, receiving stolen property is a misdemeanor of the first degree. If the value of the property involved is three hundred dollars or more and is less than five thousand dollars, if the property involved is any of the property listed in section 2913.71 of the Revised Code, or *if the offender previously has been convicted of a theft offense, receiving stolen property is a felony of the fourth degree.* If the property involved is a motor vehicle, as defined in section 4501.01 of the Revised Code, if the value of the property involved is five thousand dollars or more and is less than one hundred thousand dollars, or if the offender previously has been convicted of two or more theft offenses, receiving stolen property is a felony of the third degree. If the value of the property involved is one hundred thousand dollars or more, receiving stolen property is a felony of the second degree." (Emphasis added.)

Defendant argues he did not know nor should he have known the water meters were stolen property. Factors to be considered in determining whether reasonable minds could conclude whether a defendant knew or should have known property has been stolen include:

"(a) the defendant's unexplained possession of the merchandise, (b) the nature of the merchandise, (c) the frequency with which such merchandise is stolen, (d) the nature of the defendant's commercial activities, and (e) the relatively limited time between the thefts and the recovery of the merchandise. Hence the trial court properly denied the defendant's motions for a directed acquittal on those charges. *State* v. *Wilson* (1985), 21 Ohio App. 3d 171, 172; *State* v. *Stokey* (April 12, 1984), Cuyahoga App. No. 47391, unreported, at 5-6; see *State* v. *McAllister* (1977), 53 Ohio App. 2d 176, 180-181." *State* v. *Brooks* (Feb. 27, 1986), Cuyahoga App. No. 50384, unreported, at 6.

The evidence, *sub judice,* establishes the meters had been stolen sometime during the period April 4 through June 8, 1986, with at least some of the meters if not all the meters having been stolen sometime between June 6 and June 8, 1986. The meters were quickly sold to Scrap Mart and discovered a few days after purchase by Scrap Mart. Water meters, by their nature, have a limited use and reasonable minds can conclude defendant knew or should have known they would belong to a public utility such as the Cleveland Water Department. Defendant testified he is aware stolen merchandise is often sold as scrap and from his own experience at scrapping metals reasonable minds could conclude defendant knew or should have known the meters were stolen property. Furthermore, defendant paid only $20 for approximately two hundred sixty pounds of brass and resold it

within a short time for over three times the price.

The test for sufficiency of the evidence follows:

"* * * [T]he test is whether after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. The claim of insufficient evidence invokes an inquiry about due process. It raises a question of law, the resolution of which does not allow the court to weigh the evidence. *Jackson* v. *Virginia* (1979), 443 U.S. 307, 319; *United States* v. *Lincoln* (C.A. 8, 1980), 630 F. 2d 1313,1316; *Dorman* v. *State* (Alaska 1981), 622 P. 2d 448, 453; *Ridley* v. *State* (1976), 236 Ga. 147, 149, 223 S.E. 2d 131, 132; *State* v. *Sorgee* (1978), 54 Ohio St. 2d 464 [8 O.O. 3d 452]; *State* v. *Robinson* (1955), 162 Ohio St. 486 [55 O.O. 388]." *State* v. *Martin* (1983), 20 Ohio App. 3d 172, 175, 20 OBR 215, 218-219, 485 N.E. 2d 717, 720.

In the case *sub judice,* the record reveals reasonable minds could find beyond a reasonable doubt defendant knew or should have known the brass water meters were stolen. Thus, the conviction was sustained by sufficient evidence.

Defendant also claims the verdict was against the manifest weight of the evidence. Defendant and Massey both denied they knew the meters were stolen; however, their testimony conflicted with the circumstantial evidence adduced at trial. Furthermore, conflicts in the evidence are determined by the fact finder.

"On the trial of a case, either civil or criminal, the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State* v. *DeHass* (1967), 10 Ohio St. 2d 230, 39 O.O. 2d 366, 227 N.E. 2d 212, paragraph one of the syllabus.

In determining whether the verdict was against the manifest weight of the evidence, "* * * [t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. See *Tibbs* v. *Florida* (1982), 457 U.S. 31, 38, 41; *United States* v. *Lincoln, supra,* at 1319; *Dorman* v. *State, supra,* at 454; *State* v. *Robinson, supra; State* v. *Petro* (1947), 148 Ohio St. 473 [36 O.O. 152]; [3 Wright, Federal Practice and Procedure: Criminal 2d (1982)], *supra,* at Section 553." *State* v. *Martin, supra,* at 175, 20 OBR at 219, 485 N.E. 2d at 720-721; accord *State* v. *Eley* (1978), 56 Ohio St. 2d 169, 10 O.O. 3d 340, 383 N.E. 2d 132.

A review of the entire record fails to reveal the jury clearly lost its way and created a manifest miscarriage of justice.

Accordingly, defendant's assignment of error number one is not well-taken and is overruled.

Assignment of error number two follows:

"The admission of evidence by the police detective in regards to an arson report should not have been allowed because it was not relevant and thereby highly prejudicial."

Assignment of error number two lacks merit.

Evid. R. 401 provides:

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable

than it would be without the evidence."

Evid. R. 403 provides:

"(A) Exclusion mandatory. Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.

"(B) Exclusion discretionary. Although relevant, evidence may be excluded if its probative value is substantially outweighed by considerations of undue delay, or needless presentation of cumulative evidence."

Furthermore, the trial court is vested with discretion in determining the admissibility of evidence. Evid. R. 104. Therefore, any error in the admission of evidence must be analyzed under an abuse of discretion standard of review.

"The term 'abuse of discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *State* v. *Adams* (1980), 62 Ohio St. 2d 151, 157, 16 O.O. 3d 169, 173, 404 N.E. 2d 144, 149.

In the case *sub judice* Det. Smith testified regarding the investigation leading to defendant's arrest. He testified he obtained a license plate number from Freund. The vehicle defendant was driving was registered to a Ms. McArdo. He had difficulty obtaining a current address for McArdo so he did a computer check to determine if she had recently filed any criminal complaints. He discovered McArdo had filed a complaint against defendant alleging defendant had set fire to McArdo's car. Smith further testified no indictment against defendant resulted from the complaint. Smith also testified once he obtained defendant's name through this process, he obtained a recent photograph of defendant. Smith showed Freund a photographic array containing defen-

dant's photo. Freund selected defendant's photo from the array as one of the persons from whom Freund had purchased the stolen water meters.

Under the circumstances, the arson report proved not to be merely an unfounded accusation but was a vital link in Smith's investigation and connected defendant with the vehicle registered to McArdo. The court did not abuse its discretion in admitting this evidence into the record. Furthermore, Smith's testimony indicating defendant had never been indicted for this offense lessened any possible prejudicial value. Therefore, if it was error for the trial court to admit evidence of the arson report, it was harmless beyond a reasonable doubt since the record reveals the remaining evidence constitutes overwhelming evidence of defendant's guilt. See *Chapman* v. *California* (1967), 386 U.S. 18; *State* v. *Williams* (1983), 6 Ohio St. 3d 281, 290, 6 OBR 345, 353, 452 N.E. 2d 1323, 1333.

Accordingly, assignment of error number two is not well-taken and is overruled.

*Judgment affirmed.*

NAHRA, C.J., and J.V. CORRIGAN, J., concur.