**The STATE of Ohio, Appellee,**

v.

**ORIN, Appellant.**

[Cite as *State v. Orin* (1992), 84 Ohio App.3d 812.]

Court of Appeals of Ohio,
Ross County.

No. 1835.

Decided Dec. 31, 1992.

*Richard G. Ward,* Ross County Prosecuting Attorney, and *William H. Allyn, Jr.,* Assistant Prosecuting Attorney, for appellee.

*James E. Barrington,* for appellant.

STEPHENSON, Presiding Judge.

This is an appeal from a judgment of conviction entered after a bench trial by the Ross County Court of Common Pleas finding James D. Orin, defendant below and appellant herein, guilty of the offense of carrying a concealed weapon in violation of R.C. 2923.12, a third degree felony. The following errors are assigned:

"The court erred to the manifest prejudice of Defendant by:

"I. Finding that all of the essential elements of the crime charged were proven beyond a reasonable doubt, when it did not affirmatively appear from the testimony that the Defendant did carry or have a deadly weapon concealed on his person *or* concealed ready at hand.

"II. The Court's rejection of the affirmative defense, set forth in subsection (C)(2) of R.C. 2923.12, upon the Court's erroneous finding that Defendant's actions were not prudent.

"III. Denying Defendant Due Process and Equal Protection of the law by ruling that the General Assembly could not have reasonably intended for Defendant's conduct to go unpunished."

The prosecution presented evidence tending to establish the following facts. On May 4, 1991, at about 7:00 p.m., a Terry Vincent was parked outside the Sack and Save store located in Chillicothe, Ohio, while his wife was shopping inside the store. Through a front window of the store, he observed appellant using a pay telephone inside the store. The witness testified that he observed appellant take a pistol from a paper bag, load it, slam the cylinder shut and return the gun to the bag.[1]

After Mrs. Vincent exited the store, her husband told her what he had observed. She then called the police from a nearby store to report the observation of the pistol. She testified at trial that she saw appellant place the gun in the paper bag.

Deputy Fred Steinbrook overheard the dispatch of the Chillicothe police officer to the store. Being nearby, the deputy responded and observed appellant leaving the store carrying a paper bag. He approached appellant and asked about the contents of the bag. Appellant responded that it contained a bag of potato chips and a gun. The deputy took possession of the bag and delivered it to Sergeant Jeffrey Keener of the Chillicothe Police Department, who had arrived at the scene.

Officer Keener opened the brown shopping bag and observed therein a closed black nylon bag. In the nylon bag the officer found a loaded H & R twenty-two caliber revolver, a starter pistol and a knife that was in a box. Another officer at the scene, Robert R. Nelson, testified appellant stated he was carrying the gun for protection. The officer subsequently fired the revolver, which was found to be operable.

Appellant's defense evidence tended to corroborate the state's evidence as to the possession of the pistol. The main thrust of the defense was that appellant was not guilty by reason of an affirmative defense available to him under R.C. 2923.12(C)(2). Appellant's evidence respecting the affirmative defense will be set out under our discussion of the second assignment of error. The court held the affirmative defense was not proven and found defendant guilty.

---

1. Other evidence tended to establish that the cylinder must be removed to load and cannot be slammed shut.

■ Under the first assignment of error, appellant argues that he did not have the pistol concealed on his person or concealed ready at hand and thus no violation was proven. R.C. 2923.12(A) reads as follows:

"No person shall knowingly carry or have, concealed on his person *or concealed ready at hand,* any deadly weapon or dangerous ordnance." (Emphasis added.)

Appellant argues the weapon was not "concealed ready at hand" because it was in a zippered nylon bag inside the sack. We disagree. In *State v. Beasley* (1983), 4 Ohio St.3d 24, 28, 4 OBR 71, 74, 446 N.E.2d 154, 157, Chief Justice Celebrezze stated the following:

"In the case *sub judice,* it is uncontroverted that this weapon was unloaded, inside a zippered pouch, and, in fact, disassembled. As recognized by the court of appeals below, it would have taken two hands and an appreciable length of time for appellee to remove the weapon from the pouch and to assemble and load it; all while continuing to drive her car. I do not believe the General Assembly intended that individuals be guilty of violating R.C. 2923.12 under such circumstances.

"The Committee Comment to R.C. 2923.12 states:

" 'The section prohibits having or carrying any deadly weapon or dangerous ordnance, either concealed or on one's person, or concealed where it *may be readily picked up and used.*' (Emphasis added.)

"Thus, the General Assembly has considered 'ready at hand' with 'may be readily picked up and used.' In the instant cause, if appellee had 'picked up' her weapon, it certainly would not have been capable of being 'used' in its condition. Hence, there is insufficient evidence of record to sustain appellee's conviction."

In the case *sub judice,* the weapon was concealed, loaded, operable and immediately available to be picked up and used simply by opening the nylon bag and removing the weapon. We are not persuaded under these facts that the weapon was not "concealed ready at hand." See Annotation, Offense of Carrying Concealed Weapon as Affected by Manner of Carrying or Place of Concealment (1955), 43 A.L.R.2d 492, 534, Section 12(a), where the following summary of the general rule appears:

"Although there is a split of opinion on the subject (see Sec. 12[b], infra) the majority of the cases support the statement that the defendant's carrying of a weapon hidden in a bag, bundle, lunch basket, traveling bag, or other similar article which is held in the hand or placed under the arm, is generally sufficient to constitute a transgression of the statute."

The first assignment of error is overruled.

Appellant's second assignment of error posits the principal issue of this appeal, which is whether appellant had proven the affirmative defense. R.C. 2923.12 reads, *inter alia,* as follows:

"(A) No person shall knowingly carry or have, concealed on his person or concealed ready at hand, any deadly weapon or dangerous ordnance.

" * * *

"(C) It is an affirmative defense to a charge under this section of carrying or having control of a weapon other than dangerous ordnance, that the actor was not otherwise prohibited by law from having the weapon, and that any of the following apply:

" * * *

"(2) The weapon was carried or kept ready at hand by the actor for defensive purposes, while he was engaged in a lawful activity, and had reasonable cause to fear a criminal attack upon himself or a member of his family, or upon his home, such as would justify a prudent man in going armed."

The burden of proof as to an affirmative defense is set forth in R.C. 2901.05 as follows:

"(A) Every person accused of an offense is presumed innocent until proven guilty beyond a reasonable doubt, and the burden of proof for all elements of the offense is upon the prosecution. The burden of going forward with the evidence of an affirmative defense, and the burden of proof, by a preponderance of the evidence, for an affirmative defense, is upon the accused."

Appellant adduced the following evidence in support of his defense. On the night of May 3, 1991, a carnival was in progress in a Chillicothe, Ohio park. Douglas Draher, Jr., age sixteen, and a friend of appellant met appellant at the park. Draher testified that appellant told him if he saw Ted Gray and his friends, they were to run from them. Draher observed Gray with ten or eleven of Gray's friends and they appeared to be carrying knives and clubs in their belts.[2] Appellant and Draher then ran after Gray and his friends, chasing them, but not catching them.

Adam Hill, age sixteen, was called as a witness by appellant. Hill testified that he saw Ted Gray at the carnival and Gray told Hill he was going to beat appellant up and that Hill should advise appellant of this. Gray had a club in his coat. Hill met appellant at the carnival and advised him of Gray's threats. Later, Hill observed appellant being chased by Gray and others.

---

2. Although not in the evidence, comments of the court at sentence suggested Gray's threats against appellant arose from appellant's allegedly damaging a motor vehicle.

Dawn Orin, appellant's fifteen-year-old sister, testified as follows. While attending the carnival, she met Ted Gray and he told her that when she saw her brother to tell him "that he was going to kick his butt." She told appellant of the threat when she later saw him at home.

Appellant testified and essentially corroborated the testimony previously given on his behalf. He confirmed he was carrying the loaded revolver because of the threats of Gray, including the threat given to his sister that "he was going to kick my ass." He testified that he was going to use the revolver only to scare anyone threatening him and take off running. He did not report the threats to the police. He further testified that, while he had no contact with Gray after the night of his being chased, Gray frequented the downtown area and appellant was fearful he might encounter him, but did not, on the day of his arrest.

At the conclusion of the evidence, the court by oral pronouncement found the prosecution had proven its case beyond a reasonable doubt. The court further stated that the defendant on the third of May was confronted with a threatening situation by a person angry at him and who wanted to do him harm. The court then stated the following:

"I have no way of judging the extent of the harm which Gray and his fellows might have done. The fact that they were carrying assorted paraphernalia that might be considered to be weapons, I don't think is terribly persuasive as to the nature of the harm that might be done. We've heard kick somebody's ass, kick the defendant's ass, I don't know what that means. Mr. Barrington, I am going to reject the affirmative defense and convict your client and I find him guilty of carrying a concealed weapon. I'll tell you this, I've tried to lay out to the best of my ability findings that a court of appeals could take a look at. I want some direction. Frankly, I convict this defendant because I don't believe his conduct was prudent. I don't believe that the appropriate response to a threat is to go get a pistol loaded and carry it around. I don't believe that's, I can't believe that that's what the legislature intended happen in * * * in this kind of circumstance."

The thrust of appellant's argument is that he established his defense by a preponderance of the evidence and the trial court erred in not so finding. In substance, appellant is arguing the findings of the court are against the manifest weight of the evidence.

It is fundamental that in the trial of a case, civil or criminal, the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact. *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212. Moreover, in determining whether the verdict was against the manifest weight of the evidence, we cannot reverse the conviction unless it is obvious that the trier of fact "*clearly lost its way* and created such a *manifest*

*miscarriage of justice* that the conviction must be reversed and a new trial ordered." (Emphasis added.) *State v. Davis* (1988), 49 Ohio App.3d 109, 113, 550 N.E.2d 966, 969. After carefully reviewing the evidence adduced in the cause *sub judice,* we hold that the court below could reasonably find from the evidence that appellant had not proven his defense by a preponderance of the evidence.

In determining that the evidence would not justify a prudent man in going armed, the court could consider that, while threats were made, the nature and extent of the threatened harm was speculative and did not warrant the carrying of a loaded revolver. Additionally, the court could consider the likelihood of the possible future contact with those who had threatened appellant the night before his arrest. Appellant failed to report the threats to the police. Reporting the threats would have been a likely course of action by a prudent person who was in fear of bodily harm. Further, the court could consider that the concealed revolver was arguably not for defense purposes alone as claimed, given the fact that appellant was also carrying in the nylon bag a starter pistol with pellets, and a knife. Finally, while under some circumstances threatened danger may be ongoing, those persons threatening appellant were not present when appellant was arrested for carrying the concealed weapon. Indeed, appellant had no contact with such persons on the day of his arrest.

In sum, the court below could reasonably conclude that, under the circumstances, the threats against appellant were not of such magnitude, severity or immediacy that a prudent person would be justified in going armed in the community. Thus, we are not persuaded that the court below lost its way resulting in a manifest miscarriage of justice which would permit this court to substitute its judgment for that of the court below. The second assignment of error is overruled. The third assignment of error is not argued in appellant's brief and will be disregarded for that reason and for the further reason that we perceive no possible basis for a claimed due process and equal protection argument herein. Accordingly, the judgment is affirmed.

*Judgment affirmed.*

HARSHA, J., concurs.

GREY, J., concurs separately.

GREY, Judge, concurring.

After carefully reviewing the evidence in this case, I believe the court below could have found that appellant had not proven his defense by a preponderance of the evidence. But, like the trial court, I am concerned with the lack of standards.

The problem in this case is that the legislature created an affirmative defense to a carrying a concealed weapon charge but did not provide any clear guidelines

for a court to follow in determining what qualifies as that affirmative defense. The trial court pointed out the difficulty, when, in finding Orin guilty, it stated:

"I've tried to lay out to the best of my ability findings that a court of appeals could take a look at. * * * I want this case appealed. I want the Fourth District to take a look at this statute and tell me how to read the darn thing. * * * I just can't believe that the General Assembly is suggesting by this enactment that people who are threatened kids who threaten each other, ought to respond by arming themselves."

The trial court said, in effect: "I have had to decide this case on a subjective standard and there ought to be an objective standard."

R.C. 2923.12 sets out the general standard of the "reasonably prudent person," but there are some who believe that a "reasonably prudent person" would never carry a weapon, and others who believe that carrying a weapon might be prudent given certain circumstances. For example, in response to the recent attacks on federal judges, some of them have asked Congress to enact an exemption for them so that they can carry guns without risk of violating the local firearms control laws. Other federal judges think this is an outrageous overreaction. Are we to assume that some federal judges think like reasonably prudent persons and some do not? If you have identical threats, but different reactions, how does one determine which is the reaction of the reasonably prudent person?

There has to be an accepted objective standard. An objective standard is one which can be applied whether one personally agrees with it or not. A reasonably prudent person would find that smoking is unhealthy, and even a smoker would not disagree, although he prefers to smoke. A reasonably prudent person might ride a motorcycle, although many people would not. The difficulty in the "reasonably prudent person" standard is that it leads to a subjective analysis: "Because I would not do such a thing, the reasonably prudent person would not do such a thing." Thus, it becomes an "objective" standard subjectively arrived at.

There must be objective standards for determining the reasonableness and prudence of going about armed. Generally speaking, the court should consider all the circumstances, particularly the magnitude, severity or immediacy of the threats against the defendant such that a prudent person would be justified in going armed in the community.

The majority opinion sets forth some of the criteria which might be considered—the nature and extent, speculativeness, and the proximity and likelihood of future contact. The majority also suggests a consideration of attempts at avoidance or whether the weapon is concealed for defensive purposes alone. I, frankly, do not put much store in the majority's criterion of reporting the threat

to police, since the police ordinarily will not take any action when a person has only been threatened.

I would suggest that there are other factors which ought to be considered.

A threat may be non-specific yet sufficient to convince a reasonably prudent person to be armed. A person whose occupation requires him to carry cash or valuables might find it prudent to be armed. A person living in a high crime area might find it wise to carry a weapon. In *State v. Bobo* (1988), 37 Ohio St.3d 177, 524 N.E.2d 489, the Supreme Court held that the high crime character of an area is a relevant factor in determining probable cause for a *Terry* stop and a patdown search for the officer's protection. A reasonable and prudent private citizen might likewise regard having to live in a crime area as a *relevant factor in deciding whether to be armed.*

The "reasonably prudent person" standard of R.C. 2923.12(C) ought to be viewed somewhat like the analysis used to determine if a defendant has acted in self-defense, *i.e.*, was the response proportional and balanced. In deciding the appropriateness of self-defense, we look at the nature of the attack, the accessibility of the defendant or proximity of those making the attack. We look at the kind of injury possible—a punch in the face or a bullet in the stomach—and find that the more serious the likely injury, the more justified a violent response. We look at the defendant's interest to be protected—himself, his family, his property, or others or their property? We also look at whether the defendant chose the least offensive or harmful way to protect himself. The reasonably prudent person's response would be proportional to the threat.

In self-defense situations, the courts also look to the subjective belief of the defendant as to the seriousness of the threats against him. That, too, ought to be a criterion in the reasonably prudent person standard. There are many law-abiding persons who feel that the law will protect them. Inner city residents often feel they have no police protection, and rural residents often feel their local sheriff's office is understaffed or unconcerned. Whether or not these feelings are justified, one ought not be considered a felon for thinking so.

The majority opinion has listed some criteria, and I have suggested even more, but life being what it is, there are most likely still others which cannot be anticipated by our opinion. The best policy to be followed by a trial court in a case where an affirmative defense is offered under R.C. 2923.12 is to allow anything the defendant offers into evidence. No reversible error will ever come from letting a criminal defendant put on evidence, and no harm is likely to come to the state's case because a jury is not likely to be fooled by an invalid defense.

Applying the analysis above to this case, I have concurred because I do not believe the trial court committed error, as that term is ordinarily used. It is not

error for a trial court to apply a vague standard, if that is the only standard. I do believe, however, if the trial court determines, in light of our opinion here, that the result in this case is voidable and in violation of the Ohio Constitution for having been obtained under the wrong standard, then it may allow whatever relief is appropriate by post-conviction procedure or otherwise.

Thus, I concur.