OPINION
This is an appeal from the Lake County Court of Common Pleas. Appellant, Steven W. Summerville, appeals from his conviction on one count of attempted rape and six counts of gross sexual imposition.
On March 24, 1997, the Lake County Grand Jury indicted appellant on ten counts: count one, rape, a felony of the first degree, in violation of R.C. 2907.02; count two, gross sexual imposition, a felony of the third degree, in violation of R.C.2907.05; counts three and four, disseminating matter harmful to juveniles, felonies of the fourth degree, in violation of R.C.2907.31; counts five, six, seven, eight and nine, gross sexual imposition, felonies of the third degree, in violation of R.C.2907.05; and count ten, attempted rape, a felony of the second degree, in violation of R.C. 2907.02 and R.C. 2923.02. On March 27, 1997, appellant waived his right to be present at the arraignment and entered a plea of "not guilty" to all charges.
Upon the motion of appellee, the State of Ohio, the trial court dismissed count four and subsequently renumbered counts in the indictment from count four through count nine. From July 29, 1997 to August 1, 1997, the trial court conducted a jury trial in this matter.
The following evidence was largely elicited in appellee's case-in-chief. Appellant met Sandra Ash Summerville ("Sandra") and her eight-year old daughter ("victim") in May 1993 while living in the same apartment complex. Ultimately, appellant and Sandra wed, and in July 1996, the three moved to a townhouse located in Concord Township, Lake County, Ohio.
The victim testified that it was shortly after this time that she began to feel uncomfortable because appellant began "bumping" her near her breasts.[1] On September 8, 1996, Sandra began taking classes at a local college. It was around that time that the victim recalled an incident when she hid appellant's comb. She and appellant wrestled, as they often did, and he told her to return the comb. When she did not return the comb, appellant reached down into her pants and pulled her pubic hair, which made her feel very "confused." She did not tell her mother because she felt "scared" and "confused." She also said nothing to appellant because she was afraid.
The victim asserted that around October 1996, while she and appellant wrestled, he pinned her down, pulled up her shirt and licked her breasts with his tongue for about ten seconds. She felt uncomfortable but did not disclose her feelings because appellant intimidated her. The victim claimed that appellant engaged in similar conduct on five different occasions.
The victim also stated that in November 1996, she and appellant wrestled in her mother's bedroom when he undressed her. She ran into her bedroom, laid on her bed and attempted to put on her apparel when appellant followed her and placed his head between her legs. The victim warranted that appellant was "about five to ten inches away from [her] private area." She told him to "stop" and slapped him. Appellant left the victim's bedroom and told her that he "thought [she] would take it as a joke" and "if [she] want[ed] to go back to the way it was when [they] lived in Trenton, then fine." The victim understood this comment to mean that appellant would discipline her like he did when they resided in the Trenton apartment complex.
The victim recalled that after that occurrence she was frightened and began crying but she did not tell appellant. She also did not mention the episode to her mother because appellant alluded to a videotape of her and a girlfriend touching each other in a sexual manner. The victim, embarrassed by the videotape, believed appellant would show it to her mother and that her mother would hate her or scold her.
According to the victim, appellant repeated episodes similar to the November 1996 scenario on a couple different occasions for which appellant apparently was not charged. Although the victim was able to deter him at times, she continued to fear him. She claimed that on December 2, 1996, while she watched television, appellant showed her a pornographic videotape involving two naked women engaged in sexual activity in a hottub. He instructed her not to tell anyone because he could get in trouble.
The victim's testimony also included the events of December 8, 1996. Upon the victim's initiation, while she and appellant wrestled, he "reached down into [her] underwear and rubbed down on [her] private" with his fingers for three to five minutes. According to the victim, she "struggled at first" then just "laid there" because she was frightened. At one point Sandra came downstairs and appellant ceased fondling the victim. After Sandra returned upstairs, appellant continued touching the victim and proceeded to pull down her pants. She stated that appellant placed "his tongue on [her] private and licked [her] private" for about three minutes. Appellant then asked the victim, "Did it feel good?"
 Later that evening, Sandra went into the victim's bedroom and the victim disclosed that appellant fondled her. Sandra asked her if she was sure and left the room to confront appellant. She returned with appellant, who apologized for any "accidentally bumping."
 The next morning, the victim stated that she felt very depressed. Sandra called the local police and reported the incident and throughout the day several people spoke with her concerning the events.
Sandra testified following her daughter. She indicated that during the time period from September 1996 to December 1996, she noticed her daughter becoming "edgy" and also noticed her grades slipping. She also stated that her marriage to appellant became "rocky" during that time period as the two of them slept in separate beds. Sandra recalled appellant acting a bit nervous on the evening of December 8, 1996.
Detective Lucci ("Lucci") testified that he and a fellow officer went to appellant's place of employment. Appellant voluntarily accompanied them to the police station despite his brother's suggestion that he obtain a lawyer prior to speaking with anyone. According to Lucci, appellant denied that "anything sexual or molestation occurred last night or any other night in his life with [the victim]." Appellant mentioned that his relationship with the victim was very close. He claimed that they wrestled together one hundred fifty to two hundred times over the past four years.
Appellant recalled that on December 8, 1996, after he, Sandra and the victim ate dinner, Sandra proceeded upstairs to study while he and the victim watched television and wrestled. He recalled that the victim wore blue jeans and a T-shirt and after they wrestled, she "came down in a t-shirt and presumably her bra and panties." Appellant indicated that he did not actually see her undergarments.
Later in the interview, appellant stated that he spit water on the victim towards the beginning of their wrestling bout when she was wearing jeans. Lucci asked appellant how he would explain an emergency room technician detecting saliva on the victim's private parts. He replied that at some point while they wrestled, she changed into her T-shirt. She put his head into a headlock with her legs and "he was not sure if his tongue came out or if his lips were wet and maybe that would account for [them] potentially finding his saliva in that area of her body." Appellant recalled seeing the victim's underwear, which contradicted what he said earlier in his interview. He told Lucci that he apologized to her for any "bumping" or "touching" and mentioned that if there was any "touching", it was inadvertent and he did not mean anything by it.
Appellant stated that he did not show pornographic videotapes to the victim. Nevertheless, Lucci searched the home and found two videotapes, which he viewed, and one of them contained material consistent with scenes the victim recalled watching.
At the conclusion of appellee's case-in-chief, appellant moved for a judgment of acquittal pursuant to Crim.R. 29, which the trial court overruled. Appellee also moved to amend count three of the indictment by deleting the term "harmful" from the language, while retaining the word "obscene." At the conclusion of appellant's case, defense counsel renewed the motion for acquittal, which was once again overruled.
The jury returned its verdict on August 1, 1997, finding appellant not guilty of committing rape and disseminating matter harmful to juveniles. However, appellant was found guilty on six counts of gross sexual imposition, R.C. 2907.05, and one count of attempted rape, R.C. 2907.02 and R.C. 2923.02.
In a judgment entry filed September 22, 1997, the trial court sentenced appellant to serve a definite term of four years in prison on the attempted rape count and a term of one year on each count of gross sexual imposition, to be served concurrently with each other, but consecutive to the attempted rape count.
On October 21, 1997, appellant timely filed this notice of appeal. Appellant now asserts the following assignments of error:
 "[1.] The charge of disseminating matter harmful to juveniles in violation of R.C. 2907.31 was improperly indicted in violation of the appellant's right to a grand jury determination and the due process clauses of both the state and federal constitutions.
 "[2.] The evidence is constitutionally insufficient to sustain the convictions of attempted rape and five counts of gross sexual imposition."[2]
In the first assignment of error, appellant asserts that the trial court erred by amending the indictment when it removed the word "harmful" from the language of the third count. Appellant contends that altering essential elements of the crime violated his due process rights. This count of the indictment initially stated that on or between December 1, 1996 and December 8, 1996, appellant did "furnish, disseminate, provide, * * * or present to a juvenile under thirteen years of age, any material or performance that is obscene or harmful to juveniles."[3]
R.C. 2907.31 states:
 "(A) No person * * * shall recklessly do any of the following:
 "(1) * * * furnish, disseminate, provide * * * or present to a juvenile any material, or performance that is obscene or harmful to juveniles;
"* * *
 "(D) * * * If the material or performance involved is harmful to juveniles * * * a violation of this section is a misdemeanor of the first degree. If the material or performance involved is obscene * * * a violation of this section is a felony of the fifth degree. If the material or performance involved is obscene and the juvenile to whom it is sold, delivered, furnished, disseminated * * * is under thirteen years of age, violation of this section is a felony of the fourth degree."
Appellant argues that the grand jury indicted him in the alternative. Appellant maintains that if the material shown to the juvenile was harmful, the offense is a first degree misdemeanor. However, if the material was obscene, the offense is a felony.
Prior to the reading of the jury instructions, appellee requested that the trial court amend the indictment. At first, appellee suggested instructing the jury on both "obscene" and "harmful." However, after a discussion on the record, the trial court amended the indictment to conform to the evidence presented. Appellant contends that since the trial court deleted the misdemeanor language from the charge at appellee's request, the ruling was successful in avoiding a split verdict by the jury, which would have resulted in a less than unanimous verdict on an essential element of the offense.
Crim.R. 7(D) addresses the situation of amending indictments and states:
 "The court may at any time before, during or after a trial amend the indictment * * * in form or substance * * * with the evidence, provided no change is made in the name or identity of the crime charged."
The rule clearly permits errors of omission to be corrected during or after the trial, as long as such amendment makes no change in the name or identity of the crime charged. R.C. 2941.05
also addresses the sufficiency of the indictment, and provides:
 "In an indictment * * * each count shall contain * * * a statement that the accused has committed some public offense therein specified. Such statement may be made in ordinary and concise language without any technical averments or any allegations not essential to be proved. * * *"
The Supreme Court of Ohio has also held that the State may amend an indictment provided the name or identity of the crime charged does not change. State v. O'Brien (1987), 30 Ohio St.3d 122,125-126. The court reasoned that the accused should not be "misled or prejudiced by the omission of such element from the indictment." Id. at 128. A reversal of the conviction is only warranted if, from considering the entire proceeding, the appellate court finds a failure of justice. See Crim.R. 7(D).
In the instant case, the original indictment expressly stated that appellant was charged with committing a fourth degree felony because the incident involved "a juvenile under thirteen years of age." Thus, appellant had adequate notice of the charges and had an opportunity to defend. The language of the indictment made no mention of the word "misdemeanor." Therefore, the nature or identity of the offense was not altered by omitting the term "harmful" from the language of the third count of the indictment.
Appellant also argues that since it is not known on which offense the grand jury indicted appellant, the jury may have convicted him of a charge essentially different from the offense the grand jury found. This argument is moot because the jury found appellant "not guilty" on count three of the indictment.
Assuming arguendo that there was error, nothing in the record suggests that removing the word "harmful" from count three of the indictment prejudiced appellant. Appellant and his counsel knew that he was charged with a felony of the fourth degree. The transcript reveals that the trial court informed jurors that appellant was charged with disseminating matter harmful to juveniles. Moreover, all of the evidence presented by appellee was consistent with this charge. Since appellant was found "not guilty" on count three, it is clear that the trial court's action did mislead or prejudice appellant. Thus, any error that may have been committed was harmless. As the court stated in State v.Williams (1983), 6 Ohio St.3d 281, 286, quoting Chapman v.California (1967), 386 U.S. 18, 22:
 "`* * * We conclude that there may be some constitutional errors which * * * are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless, not requiring the automatic reversal of the conviction.' * * * "
Appellant was neither convicted on that count nor was his defense altered by the amendment. If there was an error, it was "so unimportant and insignificant that [it] may, consistent with the Federal Constitution, be deemed harmless." Id. Accordingly, appellant's first assignment of error is without merit.
In the second assignment of error, appellant posits that appellee did not present sufficient evidence to prove all the elements of attempted rape and the counts of gross sexual imposition. In determining whether a verdict is supported by sufficient evidence:
 "`[T]he test is whether after viewing the probative evidence and the inference[s] drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all of the elements of the offense beyond a reasonable doubt. The claim of insufficient evidence invokes an inquiry about due process. It raises a question of law, the resolution of which does not allow the court to weigh the evidence.'" State v. Schlee (Dec. 23, 1994), Lake App. No. 93-L-082, unreported, at 10-11, quoting State v. Davis (1988), 49 Ohio App.3d 109, 113.
As applied here, in proving attempted rape, appellee must prove that appellant intended to engage in sexual conduct with a person who was less than thirteen years of age and that appellant committed an act that "convincingly demonstrates" such intent.State v. Davis (1996), 76 Ohio St.3d 107, 114; State v. Woods
(1976), 48 Ohio St.2d 127, 132. In analyzing what conduct is needed to "convincingly demonstrate" such intent, the Woods court noted that the conduct complained of "`need not be the last proximate act prior to the consummation of the felony.'" Woods,48 Ohio St.2d at 131, quoting State v. Farmer (1951), 156 Ohio St. 214,216. The actor need only take a "substantial step" in the conduct planned to culminate in the commission of the crime. Id. at 132. To be considered a substantial step, the conduct must be "strongly corroborative of the actor's criminal purpose." Id.
Here, the only evidence of attempted rape was the victim's own testimony. Appellee introduced the November 1996 incident when the victim ran into her bedroom after appellant removed her clothing. He followed her, and as she tried to pull up her pants, he placed his head five to ten inches away from her private area. The victim stated that she yelled for him to stop, hit him and began sobbing. By removing the victim's clothing, appellant made a "substantial step" toward the commission of the crime. By placing his head between her legs, the jury believed that there was considerable evidence as to his intent. We cannot assume that he would not have continued with the offense had the victim not yelled and slapped him. Thus, the evidence concerning the November 1996 event is sufficient to support appellant's conviction for attempted rape, and supports the jury verdict finding him guilty on one count of attempted rape, in violation of R.C. 2907.02 and R.C. 2923.02.
In a partial contradiction of the diction employed in appellant's second assignment of error, appellant appears to concede in his brief that there was sufficient evidence, if believed, to support two of the gross sexual imposition verdicts, but that the victim's testimony was insufficient to support the three other convictions for gross sexual imposition.[4]
For a conviction of gross sexual imposition under R.C.2907.05(A)(4), appellee must prove beyond a reasonable doubt that appellant had sexual contact with a person who was less than thirteen years of age. Sexual contact is defined as:
 "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B)
Our review of the record reveals that the victim related in detail three episodes in which appellant had sexual contact with her. First, the victim described an incident that occurred around September 8, 1996, when appellant reached into her pants and pulled her pubic hair. Second, she recalled in October 1996 that appellant lifted her blouse and licked her breasts. Finally, the victim mentioned the events of December 8, 1998, when appellant reached into her pants and rubbed her private area with his fingers. Thus, there is adequate evidence with respect to the three foregoing gross sexual imposition occurrences in the record from which reasonable minds could conclude that the elements of the charge were proven beyond a reasonable doubt. Thus, appellant's convictions on three counts of gross sexual imposition are affirmed.
Although there is only specific evidence to support the foregoing three incidents of gross sexual imposition, we believe it is implicit from the record and the jury verdicts that the other three acts of gross sexual imposition related to the victim's testimony that the October 1996 incident occurred on five other separate occasions. The victim testified that during the fall of 1996, appellant "pinned her down, pulled up her shirt and licked her breasts" at least five different times. Viewing the victim's testimony in a light most favorable to the prosecution, as we are required to do, we find that a jury could have reasonably concluded that appellant did have sexual contact with the victim six separate times, thereby constituting a violation of R.C. 2907.05 gross sexual imposition, a felony of the third degree. Hence, appellant's convictions on six counts of gross sexual imposition, including the five appealed here, are valid. Accordingly, appellant's second assignment of error is without merit.
Thus, the judgment of the Lake County Court of Common Pleas is affirmed. ________________________________ PRESIDING JUDGE DONALD R. FORD
CHRISTLEY, J.,
O'NEILL, J., concur.
[1] According to the victim's testimony, she described "bumping" as "accidentally hitting the places that [she] felt uncomfortable."
[2] Although appellant was convicted on six counts of gross sexual imposition, appellant argues that the evidence was insufficient to sustain a conviction on five of those counts.
[3] Prior to the trial, the court amended the date in count three of the indictment at appellee's request.
[4] In his brief, appellant concedes that two of the gross sexual imposition incidents "can be substantiated under a sufficiency analysis." He mentions that the victim "testified specifically as to an incident that occurred in September" 1996 and a second incident that occurred in October 1996. Furthermore, appellant states that "there is insufficient evidence for the remaining convictions."