JOURNAL ENTRY and OPINION.
{¶ 1} Defendant-appellant Randy Robinson appeals his conviction for aggravated burglary following a bench trial. We find no merit to this appeal and affirm.
 {¶ 2} The events leading to Robinson's arrest occurred on August 12, 2002, at noon, at the residence of Sharena Black. Black lived with her grandparents and brother. Although she and Robinson had been involved in a romantic relationship for approximately three years, she claimed that they had "broken up" prior to August 12.
 {¶ 3} At trial, Black testified that she was walking home with her new boyfriend, William Webb, when she saw Robinson sitting on his bicycle across from her house. She and Webb went upstairs to her kitchen, and she heard Robinson running up the driveway. He entered the side door without permission, pushed the housekeeper who was standing on the landing, and climbed the stairs to the kitchen.
 {¶ 4} Black told Robinson to leave. He ignored her request and attempted to enter the kitchen. Webb grabbed the door handle to shut the door, but Robinson forcefully pushed the door open.
 {¶ 5} Black further testified that Robinson grabbed her and they began wrestling. Webb also struggled with Robinson until Black's brother, Rayshawn, came upstairs. He and Rayshawn then wrestled with Robinson, while Black telephoned the police. The two men subdued Robinson only after Rayshawn was slammed into the refrigerator. Webb and Rayshawn pushed Robinson out of the house and onto the driveway.
 {¶ 6} After Robinson was forced out of the house, Black went to check on the housekeeper, while Webb and Rayshawn returned upstairs to the kitchen. While Black was on the landing at the side door, Robinson pulled her outside. She screamed at Robinson to let her go, but he dragged her approximately fifteen feet down the driveway. Black testified that Robinson grabbed her arm and forced her down the driveway while he was on his bicycle.
 {¶ 7} Rayshawn and Webb responded to Black's screams and came outside to assist her. Robinson released Black but challenged Webb to "fight him" in the middle of the street. The police arrived and arrested Robinson.
 {¶ 8} Both Webb and Rayshawn testified, corroborating Black's testimony. Specifically, Webb stated that Robinson pushed the housekeeper "out of his way so he could come inside the house." Webb further testified that upon entering the kitchen, Robinson told him to move out of the way and the two began to wrestle.
 {¶ 9} Rayshawn testified that he was sleeping downstairs when Robinson first arrived but was awakened by the "commotion" in the kitchen. He reiterated that Webb and Robinson were "wrestling"; Robinson refused to leave; and he intervened when Robinson moved toward his sister.
 {¶ 10} Robinson testified on his own behalf. He claimed that he telephoned Black to ask for his pager, and she invited him over to her house to retrieve it. He claimed that Black was waiting in the front yard when he arrived at the house.
 {¶ 11} Robinson further testified that he and Black were talking outside and "next thing you know, * * * she just went ballistic. She started flipping out saying she don't want to be with me no more." Webb, whom Robinson had never met before the incident, grabbed him from behind and placed him in a choke-hold. In response, Robinson grabbed Webb's "private part" and broke free from Webb's hold. Once released, Robinson saw Rayshawn outside for the first time. Before Robinson could hit Webb, the police arrived. Robinson adamantly denied ever entering Black's residence. He claimed that he and Black were still dating on the day of the incident and he had no knowledge of her relationship with Webb.
 {¶ 12} At the conclusion of trial, the court found Robinson guilty of aggravated burglary and sentenced him to three years in prison. Robinson appeals, raising two assignments of error.
 Manifest Weight of the Evidence {¶ 13} In his first assignment of error, Robinson contends that the trial court's verdict is against the manifest weight of the evidence. Specifically, Robinson claims that his testimony was more believable than the contradictory testimony offered by the State's witnesses, and that even if the testimony was believed, no evidence existed to prove he had the requisite intent for aggravated burglary. We disagree.
 {¶ 14} The standard of review for a manifest weight challenge is summarized in State v. Martin (1983), 20 Ohio App.3d 172, as follows:
"* * * The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." (Citations omitted.)
 {¶ 15} The weight of the evidence and credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus. The power to reverse a judgment of conviction as against the manifest weight of the evidence must be exercised with caution and in only the rare case in which the evidence weighs heavily against the conviction. State v. Martin, supra, at 175.
 {¶ 16} In determining whether a judgment of conviction is against the manifest weight of the evidence, this court adopted the following guidelines set forth in State v. Mattison (1985), 23 Ohio App.3d 10:
"1) The reviewing court is not required to accept as true the incredible;
(2) whether the evidence is uncontradicted;
(3) whether a witness was impeached;
(4) what was not proved;
(5) the certainty of the evidence;
(6) the reliability of the evidence;
(7) whether a witness' testimony is self-serving;
(8) whether the evidence is vague, uncertain, conflicting or fragmentary."
 {¶ 17} A reviewing court will not reverse a verdict where the trier of fact could reasonably conclude from substantial evidence that the prosecution proved the offense beyond a reasonable doubt. State v.Eley (1978), 56 Ohio St.2d 169.
 {¶ 18} Robinson was convicted of aggravated burglary under R.C.2911.11(A)(1), which provides, in pertinent part:
"(A) No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if any of the following apply:
"(1) The offender inflicts, or attempts or threatens to inflict physical harm on another."
 {¶ 19} Robinson argues that based on the inconsistencies in the testimony of the State's witnesses, the trial court should have rejected the witnesses' account of the incident and believed his testimony. In support of this argument, he points to the following inconsistencies: (1) Webb and Rayshawn testified that Robinson was not on his bicycle when they responded to Black's scream, but Black stated Robinson dragged her while sitting on his bicycle; (2) Black and Officer Steele stated that the police arrived within minutes of the call, whereas Rayshawn recalled the police arriving 20 minutes after Black had been dragged down the driveway; and (3) Webb stated that he and Rayshawn were cleaning in the kitchen when Robinson dragged Black, whereas Rayshawn stated the two were just talking.
 {¶ 20} After a careful review of the record, we find Robinson's argument lacks merit. At best, Robinson has identified minor inconsistencies, which on their own do not render the testimony of the witnesses inherently unreliable, but merely places the witnesses' credibility at issue. Mattison, supra. The trial court was free to believe the State's witnesses over Robinson's self-serving testimony. SeeState v. Chaney, Cuyahoga App. No. 81348, 2003-Ohio-1161.
 {¶ 21} Moreover, all three witnesses provided a detailed account of the incident with an overall accurate rendition of the key facts. These minor inconsistencies, therefore, are not unreasonable given the duration and circumstances surrounding the incident. Thus, the trial court's decision to believe the State's witnesses and disbelieve Robinson does not constitute a miscarriage of justice warranting a reversal and new trial.
 {¶ 22} Robinson also argues that, even if the trial court believed the State's witnesses, the State failed to prove that he entered the house with the intent to commit any criminal act, and therefore, the conviction for aggravated burglary is against the manifest weight of the evidence. Again, we find this argument lacks merit.
 {¶ 23} Testimony by Black and Webb indicated that Robinson pushed the housekeeper to gain entry into the house and, furthermore, he pushed Webb and Rayshawn once inside the house and refused to leave. Additionally, Rayshawn stated that he saw Robinson wrestling Webb and "trying to get" Black. Black, Webb, and Rayshawn testified that Robinson returned to the side door and ultimately dragged Black down the driveway.
 {¶ 24} As noted by the trial court, the evidence of Robinson's persistence towards Black resulting in the aggressive pushing of anyone in his way, demonstrated at a minimum, his intent to commit an assault and/or kidnapping. Moreover, the manner in which he forcibly entered the house and refused to leave provided circumstantial evidence of his intent to commit a criminal act inside the house.
 {¶ 25} Therefore, we find that the trial court did not clearly lose its way. We find substantial, competent, credible evidence to support the court's conclusion that Robinson intended to commit a criminal act inside the house.
 {¶ 26} Robinson's first assignment of error is overruled.
 Sufficiency of the Evidence {¶ 27} Robinson claims in his second assignment of error that he was denied due process of law because the State failed to present sufficient evidence to satisfy a charge of aggravated burglary. Specifically, he contends that the State failed to produce any evidence that he possessed the requisite intent to commit a criminal act once inside Black's house. We disagree.
 {¶ 28} The standard of review with regard to the sufficiency of evidence is set forth in State v. Bridgeman (1978), 55 Ohio St.2d 261, syllabus:
"Pursuant to Criminal Rule 29(A), a court shall not order an entry ofjudgment of acquittal if the evidence is such that reasonable minds canreach different conclusions as to whether each material element of acrime has been proved beyond a reasonable doubt."
 {¶ 29} See, also, State v. Apanovitch (1987), 33 Ohio St.3d 19,23; State v. Davis (1988), 49 Ohio App.3d 109, 113. Bridgeman must be interpreted in light of the sufficiency test outlined in State v. Jenks
(1991), 61 Ohio St.3d 259, paragraph two of the syllabus, in which the Ohio Supreme Court held:
"An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence submitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." (Citations omitted.)
 {¶ 30} Robinson argues that he went to the house merely to retrieve his pager. As we discussed in regard to the first assignment of error, sufficient evidence existed to convince any rational trier of fact, beyond a reasonable doubt, that Robinson intended to commit a criminal act within the house. Accordingly, the trial court properly denied the motion for acquittal.
 {¶ 31} Robinson's second assignment of error is overruled.
Judgment affirmed.
ANNE L. KILBANE, P.J. and SEAN C. GALLAGHER, J. CONCUR