[Cite as *State v. Gerth*, 2013-Ohio-1751.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-120392 |
| | | TRIAL NO. B-1101792 |
| Plaintiff-Appellee, | : | |
| vs. | : | *O P I N I O N.* |
| MARK GERTH, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  May 1, 2013

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Philip Cummings*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Bruce Hust*, for Defendant-Appellant.

Please note:  this case has been removed from the accelerated calendar.

**DEWINE, Judge.**

{¶1}    While fleeing from police in a stolen vehicle at high speeds, Mark Gerth crashed into a taxicab, killing its driver and passenger.   He appeals his convictions, following a jury trial, for the felony murder of the taxicab driver and passenger and for receiving stolen property.   His felony-murder convictions were predicated on the underlying offense of felonious assault, which required the state to show that he "knowingly" caused serious physical harm.   He argues that because he was intoxicated he did not act knowingly.   He, also, challenges his conviction for receiving stolen property, arguing the state failed to present evidence that he knew or had reasonable cause to believe the vehicle he was driving was stolen.   We find neither argument persuasive, and affirm his convictions.

{¶2}    Officer Mark McChristian was on routine patrol in Over-the-Rhine, when he saw a red Toyota Rav4.   He ran the plates for the Rav4, and discovered it had been reported stolen two days earlier.   He followed the vehicle, while awaiting additional units to respond to the area.   When he activated his emergency lights, the driver of the Rav4 pulled over to the curb.   As Officer McChristian stepped out of his cruiser, the Rav4 took off.

{¶3}    A high-speed chase ensued.   Police in marked cruisers, with their emergency lights activated, chased the Rav4 at speeds ranging from 50 to 60 m.p.h. through residential streets with posted speed limits of 25 to 35 m.p.h.   The pursuit lasted several minutes.   During that time, the Rav4 sped through every stop sign and every red light, crossed left of center, and weaved in and out of cars.

{¶4}    Ultimately, the Rav4, which had accelerated its speed and was traveling in excess of 75 m.p.h., ran a red light and crashed into two vehicles at the intersection of

Eighth and Sycamore Streets in downtown Cincinnati. The Rav4 hit the front end of the first vehicle before crushing a taxicab. It then hit a parking meter and caught fire. The driver, later identified as Mr. Gerth, rolled out of the Rav4 and attempted to flee from police on foot. But he was quickly apprehended and taken into custody. After being placed in custody, Mr. Gerth volunteered that his passenger did not know that the vehicle had been stolen.

{¶5} In the meantime, police had found the cab driver, Mohamed Ould Mohamed Sidi, who was still wearing his seat-belt, dead behind the wheel. His passenger, Tonya Hairston, had been ejected from the cab by the force of the impact. She was lying on the street underneath the cab. Ms. Hairston was transported from the scene by ambulance, but she died enroute to the hospital.

{¶6} Mr. Gerth's passenger in the Rav4, Donald Evans, was injured and slumped over in the Rav4. He was pulled out of the vehicle and transported by ambulance to the hospital. Mr. Evans sustained fractures to his leg requiring surgery during his eight-day hospitalization.

{¶7} Mr. Gerth, who had sustained injuries to his forehead, was also transported to the hospital. A blood test revealed he had alcohol, marijuana, and cocaine in his system. A forensic toxicologist with the Hamilton County Coroner's Office testified that the amount of cocaine in Mr. Gerth's system would have affected his ability to drive. He noted that studies had shown that individuals with cocaine in their systems similar to the amount of cocaine in Mr. Gerth's system had been linked to high-risk driving behavior, including speeding, cutting off other drivers, and darting in and out of traffic.

{¶8} Mr. Gerth was charged with two counts of felony murder and four counts of aggravated vehicular homicide in connection with the deaths of Mr. Sidi and Ms.

3

Hairston, one count each of aggravated vehicular assault and vehicular assault in connection with the injuries to Mr. Evans, two counts of leaving the scene of the accident, and one count of failure to comply with the order or signal of a police officer. A jury convicted him of all the charges. The trial court sentenced Mr. Gerth to 48 and one-half years to life in prison.

{¶9}     In a single assignment of error, Mr. Gerth argues that his convictions for felony murder and receiving stolen property were not supported by sufficient evidence.

{¶10}     Mr. Gerth was convicted of felony murder for knowingly causing the death of another while committing an offense of violence, in this case felonious assault. *See* R.C. 2903.02(B). A defendant commits felonious assault when he knowingly "cause[s] serious physical harm to another * * *." R.C. 2903.11(A)(1). Mr. Gerth argues that the state failed to show he acted "knowingly." R.C. 2901.22(B) provides that "[a] person acts knowingly, regardless of his purpose when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when is aware that such circumstances probably exist." Whether a defendant acts knowingly, absent his admission, can only be determined from all the surrounding facts and circumstances. *State v. Huff*, 145 Ohio App.3d 555, 563, 763 N.E.2d 695 (1st Dist.2001).

{¶11}     Mr. Gerth argues that because he was under the influence of drugs and alcohol, there is no way he could have known that he would cause serious physical harm to someone. R.C. 2901.21(C), however, provides that "[v]oluntary intoxication may not be taken into consideration in determining the existence of a mental state that is an element of a criminal offense." " 'Intoxication' includes, but is not limited to,

4

intoxication resulting from the ingestion of alcohol, a drug, or alcohol and a drug." R.C. 2901.21(D)(4).

{¶12} Here, the state presented cruiser-cam videos of the high-speed chase, and a surveillance video of the crash. Those videos show Mr. Gerth refusing to stop for police, and then engaging in a high-speed chase. For approximately six minutes, Mr. Gerth was driving at speeds of 50 to 60 m.p.h. through residential streets with posted speed limits of 25 to 35 m.p.h. He ran multiple stop signs and stop lights, crossed the center line, and wove in and out of cars at certain points in time. Officers testified that they had tried to employ stop sticks, but in one instance they did not work, and in another, Mr. Gerth had been driving so quickly that they could not get them set up. An accident reconstructionist testified that Mr. Gerth was traveling at 77.78 m.p.h. at the intersection of Ninth and Sycamore Streets, and that he was traveling 57 m.p.h. when he hit the taxicab. The jury could infer from these facts that Mr. Gerth had acted knowingly. *See State v. Israel*, 12th Dist. No. CA2011-11-115, 2012-Ohio-4876, ¶ 88 (holding that a defendant's conviction for felony murder, with the underlying felony of felonious assault, was supported by sufficient evidence that the defendant had acted "knowingly," where the defendant had led police on an extensive high-speed chase, disregarding stop signs and red lights, forcing other motorists and police officers off the road, and had, despite testimony from an accident reconstruction expert that he had ample time to slow down or stop his vehicle for a police cruiser in the roadway in front of him, refused to slow down, ultimately striking the police officer's vehicle and killing him).

{¶13} With respect to his conviction for receiving stolen property, the state had to show that Mr. Gerth had "receiv[ed], retain[ed], or dispos[ed] of [a motor vehicle] of another" that he knew or had "reasonable cause to believe ha[d] been

5

obtained through the commission of a theft offense." R.C. 2913.51(A). Mr. Gerth argues that the state failed to prove that he knew or had reasonable cause to believe that the Rav4 had been stolen.

{¶14} There was ample evidence, however, from which the jury could conclude that Mr. Gerth knew the Rav4 was stolen. The vehicle had been reported stolen two days earlier by its owner, Ms. Hoffman. When police signaled Mr. Gerth to pull over, he initially complied, but then sped off. When he was apprehended, the first thing Mr. Gerth told police was that his passenger did not know the Rav4 had been stolen. Police recovered two blank checkbooks inside the Rav4 with Ms. Hoffman's name on them. Ms. Hoffman testified that she had not given Mr. Gerth or anyone else permission to use the vehicle. Contrary to Mr. Gerth's arguments, his statement to police, his attempt to flee, and the circumstances surrounding his possession of the vehicle indicated that he had knowledge that the Rav4 had been stolen. *See State v. Arthur*, 42 Ohio St.2d 67, 325 N.E.2d 888 (1975); *State v. Davis*, 49 Ohio App.3d 109, 112, 550 N.E.2d 966 (8th Dist.1988).

{¶15} Because the state presented sufficient evidence to sustain Mr. Gerth's convictions for felony murder and receiving stolen property, we overrule his sole assignment of error and affirm the judgment of the trial court.

Judgment affirmed.

**HENDON, P.J,** and **CUNNINGHAM, J.** concur.

Please note:

The court has recorded its own entry this date.