OPINION
This is an appeal from the Lake County Court of Common Pleas. Appellant, Ralph D. March, appeals from his conviction of robbery, a felony of the second degree, in violation of R.C. 2911.02.
On October 31, 1997, the Lake County Grand Jury indicted appellant on one count of robbery. On November 7, 1997, appellant waived his right to be present at the arraignment and entered a plea of "not guilty" to the charge. A jury trial commenced on January 12, 1998.
The following evidence was elicited from the transcript of the proceedings. Karl M. Dickinson ("Dickinson") testified that on August 2, 1997, he went to meet a friend at a local tavern. While at the tavern, he ordered a few beers and began conversing with a patron by the name of Don. Thereafter, Dickinson and Don left the bar and went to the boat landing near the Port Authority in the village of Fairport Harbor. Upon their arrival, two men pulled up behind them, exited their vehicle and began screaming obscenities at Dickinson. The two men, one of whom was appellant, began beating Dickinson and told him that he had rear-ended their automobile while at the tavern. Dickinson indicated that he did not recall hitting their vehicle, although he conceded that it could have occurred. After the two men quit beating him, he told them that if he hit their car, he would call the police. He proceeded to use his cellular telephone, when the phone was taken from him and thrown into the lake.
According to Dickinson, appellant then demanded payment in the amount of $200 to $300 for damage to the vehicle. Dickinson only had $56 or $70 on him, so he gave that amount of money to appellant. Dickinson testified that he would not have given appellant any money if he had not been beaten. He explained that appellant seemed most concerned with the damage to his vehicle and alluded to payment for the damage "more than three times." Dickinson examined appellant's vehicle, saw very little damage and informed appellant that he had insurance. Dickinson's automobile also had minor damage, but he recalled that that damage resulted from a minor parking lot incident which occurred earlier in the year with his employer. As a result of the incident, Dickinson sustained some head and back injuries. On cross-examination, Dickinson stated that Don indicated that "maybe we did hit their car." Dickinson also mentioned that he observed damage around the mid-end to rear end of appellant's vehicle.
After Dickinson testified, Tim Radcliffe ("Radcliffe"), who witnessed the incident, stated that he saw two men around Dickinson's vehicle. He indicated that he heard the men arguing and watched two men pull Dickinson out of his car. The two men began "hitting him [and] kicking him." Radcliffe warranted that he did not see Dickinson act in an aggressive manner. However, he observed one man throw a cellular telephone that "hit something and then splash[ed] into the water." He further added that he overheard Dickinson tell the men that he would pay for their car if he collided with it, but he did not think that he did.
Following Radcliffe's testimony, Patrolmen Cichon ("Cichon") asserted that after he was dispatched to the scene, Dickinson told him that he had been assaulted and that some money was taken from him. He noticed Dickinson had been hurt because of his bloody face and bruising. He also discovered part of his cellular telephone by the lake. Cichon characterized Dickinson's level of intoxication as over the legal limit to drive. However, he did not perform any field sobriety tests on Dickinson because he was a victim who had been injured and was on his way to the hospital. Cichon further added that individuals who suffer from head injuries often have difficulty performing field sobriety tests, and that reactions to head injuries could also be consistent with signs of intoxication.
Sergeant Kish ("Kish") testified that two days after the incident, the vehicle appellant was driving was involved in a car fire. Kish noted that upon inspecting the vehicle, he noticed no signs of accident damage to the rear of the automobile operated by appellant. Kish went to appellant's home the following day to question him regarding the incident, but appellant told him that "he wasn't involved in anything and he didn't want to answer any questions without an attorney."
At the conclusion of Kish's testimony, Dickinson's employer verified that in April 1997, he brushed alongside of Dickinson's vehicle with his maroon red Dodge Intrepid. He suggested that the damage to Dickinson's automobile was probably the result of that incident. At the conclusion of appellee's, the State of Ohio, case-in-chief, appellant moved for a judgment of acquittal pursuant to Crim.R. 29, which the trial court overruled.
Appellant took the stand in his own defense. He revealed that he had previously been convicted of burglary and domestic violence. He stated that on the evening of August 1, 1997, he and a friend went to a tavern to engage in an arm wresting match. Prior to going to the tavern, he went to another bar to cash his paycheck. He lost the arm wrestling match, so the two men decided to leave the pub. According to appellant, as they were leaving the parking lot, a vehicle rear-ended them and pushed them almost into the intersection of the road. The vehicle that collided with them left the scene. Appellant stated that after he observed the occupants of the automobile laughing, he became very angry and decided to follow the car.
Upon his arrival at the Port Authority, appellant pulled up behind Dickinson's vehicle, exited his vehicle and met Dickinson half-way. According to appellant, Dickinson apologized for the incident, and agreed that he should have stopped his car instead of fleeing the scene. Appellant, who was still in an angry state of mind, punched Dickinson. Further, appellant heard Dickinson's passenger, Don, indicate that they should have stopped, so he hit Dickinson again. Appellant suggested that he was afraid that his cousin, who was the owner of the vehicle that he was driving, would be very upset with him for damaging the automobile. He added that after Dickinson offered him money, he threw it back in his face and punched him again. He explained that Dickinson hit the ground and that his friend began kicking Dickinson. He also mentioned that he tossed Dickinson's keys into the lake, but claimed that he did not touch Dickinson's cellular telephone.
At the conclusion of appellant's testimony, defense counsel renewed the motion for acquittal, which was once again overruled. The jury returned its verdict on January 13, 1998, finding appellant guilty of robbery. Sentencing was deferred because defense counsel requested that a presentence investigation be performed. The trial court conducted a sentencing hearing, which took place on February 18, 1998. In a judgment entry filed February 25, 1998, the trial court sentenced appellant to serve a definite prison term of three years with one hundred thirty days credit for time already served.
On March 25, 1998, appellant timely filed this notice of appeal. Appellant now asserts the following assignment of error:
 "[1.] The trial court erred in denying appellant's motion for acquittal pursuant to Crim.R. 29."
In his sole assignment of error, appellant asserts that the trial court erred by denying his motion for acquittal pursuant to Crim.R. 29 because the requisite elements of the crime of theft, which is necessary for robbery, was not established beyond a reasonable doubt. Appellant contends that appellee failed to present sufficient evidence from which a jury could conclude, beyond a reasonable doubt, that appellant was guilty of one count of robbery.
The Supreme Court of Ohio established the test for determining whether a motion for acquittal is properly denied in State v.Bridgeman (1978), 55 Ohio St.2d 261, syllabus, which states:
 "Pursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."
Thus, when an appellant makes a Crim.R. 29 motion, he or she is challenging the sufficiency of the evidence introduced by the state. Hence, a reviewing court must look to the evidence presented to the jury to assess whether the state offered evidence on each statutory element of the offense, so that a rational trier of fact may infer that the offense was committed beyond a reasonable doubt. See State v. York (May 1, 1998), Lake App. No 97-L-037, unreported, at 7. The evidence is to be viewed in a light most favorable to the prosecution when conducting this inquiry. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. Furthermore, the verdict will not be disturbed on appeal unless the reviewing court finds that reasonable minds could not have arrived at the conclusion reached by the trier of fact. State v. Dennis (1997), 79 Ohio St.3d 421, 430-431.
Applying this standard to the case at bar, appellee was required to present sufficient evidence to establish that appellant committed the offense of robbery pursuant to R.C.2911.02, which provides:
 "(A) No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following:
 "(1) Have a deadly weapon on or about the offender's person or under the offender's control;
 "(2) Inflict, attempt to inflict, or threaten to inflict physical harm on another;
 "(3) Use or threaten the immediate use of force against another. * * *"
Theft is defined in R.C. 2913.02 as follows:
 "(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
 "(1) Without the consent of the owner or person authorized to give consent;
 "(2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent;
"(3) By deception;
"(4) By threat. * * *"
The elements of robbery that apply to the instant matter are: (1) inflicting, attempting to inflict, or threatening to inflict physical harm to another; or (2) using or threatening the immediate use of force against another. Moreover, theft as applied to the case at bar is defined as knowingly obtaining or exerting control over another's property without their consent or by threat.
As stated in State v. Davis (1983), 6 Ohio St.3d 91, paragraph one of the syllabus:
 "The use or threat of immediate use of force element of the offense of robbery, as expressed in R.C. 2911.02(A), is satisfied if the fear of the alleged victim was of such a nature as in reason and common experience is likely to induce a person to part with property against his will and temporarily suspend his power to exercise his will by virtue of the
 The record in the instant case reveals evidence which, when viewed in a light most favorable to the prosecution, would allow any rational trier of fact to find all the essential elements of robbery beyond a reasonable doubt. Appellant and his friend attacked Dickinson. Appellant admitted punching Dickinson several times. Conflicting evidence was presented as to whether Dickinson offered appellant the money or whether appellant demanded it. Although appellant may have initially thrown the money back at Dickinson, by the end of the incident, Dickinson was without $60 to $70. Appellee also demonstrated through Radcliffe, who witnessed the events, that Dickinson was slumped to the ground and that one of the men grabbed Dickinson's cellular telephone and threw it towards the lake.
When Cichon arrived at the scene, Dickinson indicated that he had been assaulted, had some money taken from him, and that appellant grabbed his car keys and threw them into the lake. Cichon also discovered part of Dickinson's cellular telephone by the lake. Further, appellant admitted that he took Dickinson's keys and threw them into the lake. Appellee, therefore, presented sufficient evidence from which a rational trier of fact could infer that Dickinson was deprived of his property without his consent by the infliction of physical harm and/or by threat of the immediate use of force, and thus, appellant committed the offense of robbery. Accordingly, appellant's conviction was supported by sufficient evidence.
Though evidence may be sufficient to sustain a guilty verdict, the issue of manifest weight requires a different type of analysis. State v. Schlee (Dec. 23, 1994), Lake App. No. 93-L-082, unreported. Although appellant's assignment of error is one directed to the sufficiency of appellee's evidence, he also raises the issue of manifest weight. The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. A reviewing court, when addressing whether a verdict is against the manifest weight of the evidence, reviews:
 "`* * * the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. * * *'" State v. Davis (1988), 49 Ohio App.3d 109, 113, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175.
In the case sub judice, there was sufficient evidence introduced at trial to support the conviction. Appellee presented competent, credible evidence that appellant obtained control over Dickinson's property, specifically his keys, without his consent by the use of force. Appellant also admitted that he repeatedly punched Dickinson. Thus, the trier of fact could reasonably conclude that appellant committed a robbery. Hence, the jury's verdict was not against the manifest weight of the evidence. Because the evidence introduced at trial was sufficient as a matter of law, and the conviction was not against the manifest weight of the evidence, we affirm appellant's conviction.
For the foregoing reasons, appellant's assignment of error is without merit, and the judgment of the Lake County Court of Common Pleas is affirmed.
 _______________________________________ PRESIDING JUDGE DONALD R. FORD
NADER, J., O'NEILL, J., concur.