OPINION
Appellant, Curtis Laster, appeals from the judgment of conviction and imposition of sentence by the Lake County Court of Common Pleas entered upon a jury verdict finding him guilty of the following three counts: complicity to aggravated robbery with a firearm specification, having a weapon while under disability, and complicity to grand theft, at least $5,000, but less than $100,000, with a firearm specification.
At approximately 5:00 a.m. on April 14, 1999, Audreana Moody drove Zachary Fitzpatrick, Carmella Ware, and Tyronne Lavender to the Super 8 Motel in Mentor, Ohio. The four conspired and planned on robbing the motel. Masked and armed, Zachary Fitzpatrick and Tyronne Lavender entered the motel and robbed it of approximately $75.
Afterwards, the four drove to Painesville, Ohio to pick up appellant. Audreana Moody drove appellant, Zachary Fitzpatrick, Carmella Ware, and Tyronne Lavender to the Fifth Third Bank on Johnnycake Ridge Road, Concord, Ohio. Masked and armed, Zachary Fitzpatrick entered the bank and robbed it of $16,665.
Appellant's jury trial commenced on September 20, 1999. Penny Gamrat, a teller at the bank, testified that a few minutes before 9:00 a.m., a black female pulled on the locked doors. A few minutes later, the same female entered the bank,[1] and shortly thereafter, a masked and armed individual entered demanding money.
The state called Audreana Moody as a witness.[2] She testified that at 5:30 a.m. she drove Zachary Fitzpatrick, Carmella Ware, and Tyronne Lavender to Mentor, Ohio in order to rob a hotel. She testified that they first drove to several motels and decided to rob the Super 8 Motel.
Audreana Moody testified that they needed another gun so they drove to appellant's apartment to pick him up. She stated that when appellant entered the car, he was holding a gun, and he said "lets do it." She further testified that before they left, appellant got out of the car to take the license plate off using a quarter that she had given him.
Audreana Moody also testified that there was continued discussion about the robbery and the prison time if caught. She testified that appellant provided the directions to a Fairport Harbor bank. She testified that everyone, including appellant, decided that the bank in Fairport Harbor was not a good location. When she suggested robbing a bank in Concord, Ohio, and appellant agreed. She also stated that appellant suggested that "the best way to do it was without a gun and with a note." Once they arrived, she entered the bank and asked a teller about opening an account. When she came back to the vehicle, she informed the cco-conspirators that they were better off robbing someone who walks out of the bank with a bag of money; rather, than robbing the bank. She testified that appellant agreed.
She further testified that Zachary Fitzpatrick asked appellant if he was going to go in with him; however, appellant refused unless there was a better plan, and it was not a good idea to go into the bank now. She testified that Zachary Fitzpatrick did not want to listen to anyone, and appellant tried to prevent him from going in; however, Zachary Fitzpatrick said that if he did not let go, he would start shooting. She testified Zachary Fitzpatrick went in and robbed the bank.
Lieutenant Detective Lonnie Sparkman, who interviewed appellant later that day, testified that during the interview, appellant stated the following: he was sleeping when Zachary Fitzpatrick arrived; he told his girlfriend that he was going with Zachary to smoke some weed;[3] once they got into the car, Zachary said he wanted to go to the bank to open an account; when they arrived, the bank was closed so they sat there for a few minutes; Audreana went into the bank and came back out; Zachary went into the bank and came running out with a gun in his hand and a bag full of money.
Lieutenant Sparkman further testified that when appellant was taken into custody, he identified himself as Curtis Johnson, age 17.[4] The next morning appellant disclosed his phone number, and appellant's mother identified him as Curtis Laster, age 19 or 20. Lieutenant Sparkman stated that when appellant was informed of this finding, he became upset and began to punch the walls.
Lieutenant Sparkman also testified that April 14, 1999 was a sunny and warm day; however, appellant was wearing layers of clothing including a dark blue hooded jacket, two T-shirts, black nylon pants, and blue jeans. Lieutenant Sparkman stated that layers are worn so they can be discarded easily so it is less likely to be identified as being involved in a crime.
The state also called Detective Eugene Lucci who testified that upon obtaining a valid search warrant, the evidence found in the car included $16,665, Fifth Third Bank wrappers, a Fifth Third Bank brochure, a black bag, some masks, a .38 caliber revolver, a .22 caliber semi-automatic pistol, a magazine that fit the .22 caliber semi-automatic pistol, and live rounds of .22 ammunition.
Mitchell Wisniewski, a criminologist, testified that appellant's fingerprints were on the magazine; however, he was unable to lift any prints from the .38 caliber revolver or from the .38 caliber cartridges. He stated that based on the number of prints and their position, appellant touched the magazine twice.
At the conclusion of the state's case,[5] the defense made a motion for acquittal; however, the court overruled that motion. After closing arguments, the court instructed the jury on the necessary definitions and elements for the offenses charged along with an explanation of the affirmative defenses of abandonment and renunciation.
The jury returned a verdict of guilty on Count One-complicity to aggravated robbery, with a firearm specification pursuant to R.C. 2941.145, a felony of the first degree, in violation of R.C. 2923.03 and 2911.01; guilty on Count Two, having weapons while under disability, a felony of the fifth degree, in violation of R.C. 2923.13; and guilty on Count Three, complicity to grand theft with a firearm specification pursuant to R.C. 2941.145, a felony of the fourth degree in violation of R.C. 2923.03
and 2913.02. A judgment entry reflecting the jury verdict was filed on October 1, 1999.
Appellant was sentenced to a definite term of ten (10) years for Count One, complicity to aggravated robbery with a definite term of three (3) years for the gun specification to be served consecutively and a definite term of one (1) year for Count Two, having weapons while under disability. Count Three, grand theft with the weapon specification, merged with the other convicted offenses. Appellant was sentenced to a total of fourteen (14) years, consecutively.
Appellant timely filed a notice of appeal asserting the following assignment of error for our consideration:
 "The convictions of Complicity to Aggravated Robbery and Complicity to Grand Theft are against the manifest weight of the evidence."
In his sole assignment of error, appellant contends that Audreana Moody was the only witness that the state used to establish his mental state and the activities prior to and subsequent to the bank robbery. Appellant asserts that the affirmative defense of abandonment was supported by a preponderance of the evidence based on the testimony of Audreana Moody who testified that appellant told Zachary Fitzpatrick not to go into the bank as he was holding onto him. Appellant contends that he advised all other conspirators of his abandonment.
A "manifest weight" argument contests the believability of the evidence presented at trial. State v. Schlee (Dec. 23, 1994), Lake App. No. 93-L-082, unreported at 4. Upon making such a determination, an appellate court must review the entire record, weigh the evidence and all reasonable inferences from it, consider the witnesses' credibility, and decide whether in resolving the conflicts in the evidence, the jury lost its way and created a manifest miscarriage of justice when it returned a guilty verdict. State v. Thompkins (1997), 78 Ohio St.3d 380, 387;Shlee, supra, at 5 (citing State v. Davis (1988) 49 Ohio App.3d 109,113). A reviewing court will not reverse a guilty verdict as being against the weight of the evidence if there exists substantial evidence upon which a trier of fact could reasonably conclude that the prosecution had proven every element of the offense beyond a reasonable doubt. Statev. Brown (1988), 38 Ohio St.3d 305, paragraph four of the syllabus. The power of a reviewing court to grant a new trial should be exercised only in extraordinary cases where the evidence weighs heavily against a defendant's conviction. Thompkins, supra, at 387.
In the case sub judice, appellant raises a manifest weight argument for his convictions of complicity to aggravated robbery, in violation of R.C. 2923.03 and 2911.01, and complicity to grand theft, in violation of R.C. 2923.03 and 2913.02.[6]
There exists substantial evidence upon which a jury could reasonably conclude all elements of the offenses charged were proven beyond a reasonable doubt. Matthew Ward, Penny Gamrat, and Patricia Russell supported certain aspects of Audreana Moody's testimony. There also exists additional evidence against appellant such as his fingerprints on the magazine showing that he touched it twice, appellant's layers of clothing, and appellant's false identification and his violent reaction when his true identity was discovered.
Evidence which supports appellant's theory of the case that he did not know of the bank robbery, that he was accompanying Zachary Fitzpatrick only to smoke marijuana, or that he abandoned the conspiracy include: Lieutenant Sparkman's testimony that appellant possessed marijuana, appellant's statements later that day that he left with Zachary Fitzpatrick to go smoke some weed, Audreana Moody's testimony that appellant stated it was not a good idea to go into the bank now, and that he tried to prevent Zachary Fitzpatrick from entering the bank.
Furthermore, the trial court gave precautionary instructions to the jury that the quality not the quantity of the evidence must be weighed, that they are not required to believe any witness, and that an accomplice may have special motives so they should carefully examine such testimony. The jury was instructed on the affirmative defenses of renunciation and abandonment with the burden resting on the appellant to prove such defenses by a preponderance[7] with all evidence bearing on those defenses to be considered regardless of who produced it.
Upon reviewing the entire record, weighing all the evidence supporting both sides, all reasonable inferences from the evidence, considering the credibility of all the witnesses including Audreana Moody, nothing in the record suggests that the jury clearly lost its way in creating a manifest miscarriage of justice when they returned a guilty verdict on all three counts.
There exists substantial evidence upon which a jury could reasonably conclude that the prosecution had proven every element of complicity to aggravated robbery and complicity to grand theft beyond a reasonable doubt.
Furthermore, based on the evidence presented, a jury could reasonably conclude that appellant did not prove the affirmative defenses of abandonment by a preponderance of the evidence. The testimony of Audreana Moody showed appellant's conduct in the car, prior to Zachary Fitzpatrick exiting to commit the robbery, did not support the affirmative defense of abandonment; rather, appellant's statements showed a desire to revise the plan. The fact that appellant remained in the car while Zachary Fitzpatrick was inside the bank, that appellant advised Audreana Moody to move the car where it was agreed to be waiting, and that appellant opened the car door for Zachary Fitzpatrick after the robbery all show that appellant never abandoned the conspiracy, only the original plan for the robbery.
Appellant's convictions are not against the manifest weight of the evidence.
Appellant's sole assignment of error lacks merit. The judgment of the trial court is affirmed.
FOR THE COURT. O'NEILL, P.J., CHRISTLEY, J., concur.
[1] Patricia Russell, officer manger, testified that a black female entered and was directed to sit at the desk for "new accounts". She was there for two minutes and then she left. A few minutes later, a masked and armed individual entered the bank.
[2] Audreana Moody testified that she pled guilty to both aggravated robbery with a firearm specification in connection to the Super 8 Motel robbery and aggravated robbery with a lesser firearm specification in connection with the Fifth Third Bank robbery in exchange for her testimony against the co-defendants.
[3] Lieutenant Sparkman testified that when appellant was apprehended, he was in possession of marijuana.
[4] The voluntary statement that appellant submitted to police that day was also signed Curtis J. Johnson, age 17. (State's Exhibit 14, admitted in evidence.)
[5] The state read a stipulation signed by appellant that he was convicted of felony violence on March 5, 1997.
[6] Complicity under R.C. 2923.03, provides in part, that no person, acting with the kind of culpability required for committing an offense, shall aid or abet another in committing the offense. An affirmative defense to complicity occurs when prior to the commission of the offense, the actor ends his complicity by manifesting a complete and voluntary renunciation of his criminal purpose. R.C. 2923.03(E).
Aggravated robbery under R.C. 2911.01, provides in part, no person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall have a deadly weapon on or about their person or under their control and either display the weapon, use it, etc.; inflict, or attempt to inflict, serious physical harm on another; etc.
Theft under R.C. 2913.02, provides in part, no person, with purpose to deprive the owner of property shall knowingly obtain or exert control over the property without the consent of the owner, by threat; by intimidation, etc.
[7] Conspiracy under R.C. 2923.01, provides, in part, no person, with purpose to commit or promote or facilitate the commission of one of the listed offenses shall, with another person or persons, plan or aid in planning the commission of the offense. No person shall be convicted of conspiracy unless a substantial overt act in furtherance of the conspiracy is proved. An overt act is substantial when it manifests a purpose on the part of the actor that the object of the conspiracy should be completed.
Affirmative defenses to a charge of conspiracy are: (a) after conspiring to commit an offense, the actor thwarted the success of the conspiracy under circumstances manifesting a complete and voluntaryrenunciation of the actor's criminal purpose or (b) after conspiring to commit an offense, the actor abandoned the conspiracy prior to the commission of or attempt to commit any offense that was the object of the conspiracy, either by advising all other conspirators of the actor's abandonment, or by informing any law enforcement. R.C. 2923.01(I).