OPINION
This is an accelerated calendar case submitted on the record and the briefs of the parties. Appellant, Sabrina Butler ("Butler"), appeals from the judgment of the Ashtabula Municipal Court entered on August 1, 2000. After a jury trial, Butler was convicted of resisting arrest in violation of R.C. 2921.33(A). The following facts are relevant to a determination of this appeal.
On September 25, 1999, one Jay Campbell, Butler's ex-boyfriend and the father of her children, spent the day at Butler's home watching the children while Butler was at work. When Butler returned home, she wanted him to leave, as she was expecting her new boyfriend to visit. When Campbell would not leave, Butler called the Ashtabula Police Department. Officers Kaselak and Brown were dispatched to the residence.
When the officers arrived, Butler was in a highly agitated state. Mr. Campbell was relatively calm and composed. The officers began trying to determine Campbell's status. When Butler kept interrupting, the parties were separated and questioned individually. Officer Kaselak noticed mail in the kitchen addressed to Campbell, and that Campbell's drivers license listed this location as his residence. Concluding that Campbell either lived there or had the right to live there, and because Butler was not claiming she was the victim of any offense other than trespass, the officers concluded they could not force Campbell to leave. The officers then exited the home. Anticipating they might be dispatched back to the location shortly, the officers waited by their vehicles, which were parked on the street in front of the house. While outside the house, they could hear Butler yelling and screaming. Moments later, they received another 911 call from the dispatcher for that address. Then Campbell came out of the house. He informed the officers that Butler had just punched him in the mouth. While the officers could not see any visible injury, Campbell was no longer as composed as he had been before and, based upon their training and experience, the officers concluded that Butler had committed domestic violence.
At trial, Officer Kaselak testified that they re-entered the house and informed Butler that she was under arrest for domestic violence. The officers permitted her to make a phone call. Butler called her mother. She was very upset and, according to the officer, began yelling and screaming about being arrested. After approximately three minutes, the officers told Butler they had to get going. Butler continued yelling. Officer Kaselak hung up the phone. Officer Kaselak testified that when they attempted to put handcuffs on Butler, she began to struggle, refusing to put her hands together, yelling, and twisting her body in evasion. After they got the handcuffs on, Butler continued struggling, twisting and yelling, and would not walk out of the house. Officer Kaselak testified that they essentially had to carry her out of the house. Butler continued to struggle outside and it required both officers to get her seated in the police car. Officer Brown's testimony at trial was entirely consistent with officer Kaselak's, and he corroborated the events as described by Officer Kaselak.
Once the officers secured Butler in the car, they asked Campbell for a written statement, but he declined to provide one. Campbell was subpoenaed for trial, but did not appear. Consequently, on motion of the state, the domestic violence charge and a disorderly conduct charge were dismissed prior to the commencement of the trial.
At trial, on direct examination by defense counsel, Butler was asked the following question:
 "Q: Now, the police officers testified that they've been to your residence before. Have you ever been arrested before?
"A: No, I have not."
 Prior to beginning cross-examination, the state requested a recess to obtain certified copies of Butler's prior convictions. Outside the presence of the jury the state requested a ruling from the court on the admissibility of the prior convictions. Defense counsel argued the convictions were not admissible under Evid.R. 609, because they were neither felonies nor involved dishonesty or false statement. Apparently, defense counsel was under the impression she had asked Butler if the police had previously arrested her when responding to calls at her residence. Defense counsel argued it limited the question to that circumstance and, thus, did not open the door to cross-examination on the issue.
The state argued Butler was asked if she "ever" was arrested, and that her response was a lie. Therefore, the state argued it was entitled to impeach her credibility under Evid.R. 616(C). In response, defense counsel argued that the prior convictions were not admissible under Evid.R. 616(C), because their admission would conflict with Evid.R. 609. However, the court did not view the issue as strictly an Evid.R. 609 problem, falling strictly within that rule. The court considered that the defense had interjected the issue into the proceedings. The defendant made a statement to bolster her credibility and created the impression, which was false, that she had never been arrested. The court, therefore, saw the problem as a "character issue." While the court did not state its exact reasoning on the record, it decided to allow a limited cross-examination under the ambit of Evid.R. 608(B).
Upon cross-examination, the following colloquy occurred:
 "Q: I believe, in response to your attorney's question, about being arrested, before you said you've never been arrested; is that correct?
 "A: Yes. But at my home, I have never been arrested by — —
"Q: You have been arrested?
"A: Five years ago.
 "Q: Isn't it true that you were arrested in October of 1994?
"A: Yeah, I think that was.
 "Q: And weren't you also arrested on March 5th of 1995?
"A: No — March 5th?
"Q: You were not arrested in March?
"A: No. What was that for?
"Q: Aggravated disorderly conduct?
"A: No, only been arrested one time.
"Q: Is your middle name Lynette?
"A: Uh-huh. I've only been arrested one time.
 "Q: So, when your lawyer asked you whether or not you have ever been arrested and you responded `no', that wasn't actually correct, was it?
"A: No, but what does this have to do with this now?
 "Q: Your honor, would you instruct this witness to answer my question?
 "COURT: Miss Butler, she's inquiring into a matter that was brought out on direct. So, if we can move on.
 "A: It was just one time, I don't remember the other time.
"Q: If I had a certified copy of the — —
"DEFENSE COUNSEL: Objection.
"A: Could you please — —
"Q: Your honor, the witness would like to see it.
"DEFENSE COUNSEL: Objection.
 "COURT: We are getting off the issue. I'll cut off the examination at this point. She recalls one instance, that's in the record, I'll sustain the objection.
 The cross-examination then resumed on matters other than the prior convictions. One of the prior convictions was for aggravated disorderly conduct. The record does not reveal what the other prior conviction was for, only that it was not a felony and did not involve dishonesty or false statement.
Defense counsel had made a Crim.R. 29 motion for acquittal at the close of the state's evidence, and renewed the motion at the close of its evidence, thereby preserving the issue for appeal. At neither point in the proceedings did defense counsel make an argument in support of the motions, which were denied. The case was submitted to the jury, and the defendant was found guilty of resisting arrest. From this judgment, Butler timely filed her notice of appeal, assigning the following errors:
 "1]. The appellant's conviction was a direct and proximate result of the ineffective assistance of counsel, in violation of the appellant's rights pursuant to the Fifth and Fourteenth Amendments of the United States Constitution and Article 1, Section 10
of the Constitution of the State of Ohio.
 "2]. The appellant's conviction for resisting arrest was against the manifest weight of the evidence.
 "3]. The trial court erred to the prejudice of the appellant in denying the motion for acquittal made pursuant to Criminal Rule 29.
 In Butler's first assignment of error, she argues she was denied effective assistance of counsel because counsel failed to object to "improper questioning" by the state concerning her prior convictions, and because counsel, upon making the Crim.R. 29 motions for acquittal, failed to argue them.
To establish a claim for ineffective assistance of counsel, the defendant must prove that counsel's performance fell below an objective standard of reasonable representation and that prejudice arises from counsel's performance. State v. Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus. This is a two pronged analysis.
With respect to the first prong, "[i]n order to determine whether an attorney's performance was deficient, the trial court must inquire whether the attorney provided `reasonably effective assistance, considering all of the circumstances.'" State v. Laird (Dec. 15, 2000), Portage App. No. 99-P-0069, unreported, 2000 Ohio App. LEXIS 5924 at *6-7, quoting State v. Loza (1994), 71 Ohio St.3d 61, 83. A properly licensed attorney is presumed to be competent and, thus, judicial scrutiny of his or her performance must be highly deferential.Strickland v. Washington (1984), 466 U.S. 668, 689. An attorney's strategic decisions and trial tactics will not support a claim of ineffective assistance of counsel. State v. Clayton (1980),62 Ohio St.2d 45, 48-49.
To demonstrate the second prong, prejudice, the defendant must demonstrate that there is a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different.Bradley, paragraph three of syllabus. "`A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. at 142, quoting Strickland at 694.
It is not entirely accurate to say that defense counsel failed to object to the state's cross-examination on the issue of prior convictions. Before the state even began cross-examination, the issue of the admissibility of the prior convictions was argued by counsel outside the presence of the jury. After listening to arguments of counsel, the court determined to allow some cross-examination on the issue. Butler had made a statement that was clearly false during direct examination.
Having presented cogent arguments to prevent the questioning at issue, and having been overruled by the court, defense counsel cannot be faulted for failing to immediately object to the questioning. The court had just informed counsel it intended to allow the said questioning. However, because any evidence of the prior convictions normally would have been inadmissible, clearly it was a questionable exercise on the part of trial counsel to interject the issue into the proceedings in the first place. The episode was clearly damaging to Butler's credibility. It is not reasonably effective assistance of counsel to simultaneously expose negative facts and harm a client's credibility.
Nevertheless, Butler cannot establish the necessary prejudice to warrant a reversal. Butler testified that she did not resist arrest, and that the two police officers were lying. Butler admitted she was very upset by the situation. She claimed she was wearing a "nightie," and only resisted to the extent she wanted to put some clothes on, which the police did not allow. Her testimony completely contradicted all of the police officers' testimony regarding her removal from the house. The testimony of the two officers, which was given prior to Butler's, established all the elements of the charged offense. We cannot conclude that, if not for the cross-examination on prior convictions, there was a reasonable probability the result of the trial would have been different. This portion of Butler's argument is without merit.
In her second issue presented for review within this assignment of error, Butler claims it was error for defense counsel to fail to argue the Crim.R. 29 motions.
Butler was charged with resisting arrest in violation of R.C. 2921.33(A), which states that "[n]o person, recklessly or by force, shall resist or interfere with a lawful arrest of the person or another." An element of the offense is that the arrest is "lawful." However, in a "resisting arrest" case, it is not necessary for the state to prove that the defendant was in fact guilty of the offense for which the warrantless arrest was made. Coffel v. Taylor (1978), 8 Ohio Op. 3d 253, 1978 U.S. Dist. LEXIS 19213; See, also, Cleveland v. Murad (1992),84 Ohio App.3d 317. A law enforcement officer may arrest a person for a misdemeanor "when circumstances exist that would cause a reasonable person to believe that a crime has been committed in his presence." Ryanv. Conover (1937), 59 Ohio App. 361, 364. Furthermore, an officer may have probable cause for a warrantless misdemeanor arrest even though the officer did not witness the alleged assault. R.C. 2935.03(A)(3)(a)(i), (ii), and (b).
"Pursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." State v. Bridgeman
(1978), 55 Ohio St.2d 261, syllabus. See, also, State v. Cisternino
(Mar. 30, 2001), Lake App. No. 99-L-137, unreported, 2001 Ohio App. LEXIS 1593. A motion for judgment of acquittal under Crim.R. 29(A) should be granted only where reasonable minds could not fail to find reasonable doubt. Bridgeman. In order to remove the matter from the jury and grant an acquittal, there must be insufficient evidence to sustain a conviction. In this analysis, the reviewing court must examine the evidence in a light most strongly in favor of the state. Cisternino
citing State v. Williams (1996), 74 Ohio St.3d 569.
Through the testimony of each of the officers, the state presented sufficient evidence to submit the matter to the jury. It is a sign of competence when counsel can recognize that an argument is futile. When an argument is futile, counsel need not make it. Thus, considering all the circumstances, with respect to this argument, counsel provided reasonably effective assistance when it made the motions. Butler's argument with respect to the Crim.R. 29 motions are without merit.
Butler's first assignment of error is without merit. In Butler's third assignment of error, she argues the trial court's failure to grant her Crim.R. 29 motions was error. For the reasons stated above, this assignment of error is also without merit.
In her second assignment of error, Butler argues her conviction was against the manifest weight of the evidence.
 "`In determining whether the verdict was against the manifest weight of the evidence, "(* * *) [t]he court reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. (* * *)"' (Citations omitted.) (Emphasis added.) * * *." State v. Schlee (Dec. 23, 1994), Lake App. No. 93-L-082, unreported, 1994 Ohio App. LEXIS 5862 at *14-15, citing State v. Davis (1988), 49 Ohio App.3d 109, 113; See, also, State v. Thompkins (1997), 78 Ohio St.3d 380, 387.
 Upon this record, we cannot conclude that in resolving the conflicts in the evidence, the jury clearly lost it way. Nor can we conclude that the conviction constituted a manifest miscarriage of justice. Butler's second assignment of error is without merit. The judgment of the trial court is affirmed.
 ________________________________________ PRESIDING JUDGE WILLIAM M. O'NEILL
FORD, J., concurs, GRENDELL, J., dissents.