JOURNAL ENTRY and OPINION
{¶ 1} Appellant Jere M. Hinton appeals his convictions for violating the City of Strongsville's zoning code by operating an art gallery out of his home. He assigns the following two errors for our review:
"I. The trial court's conviction of defendant for violating Strongsville Codified Ordinance Sections 1252.03 and 1272.07 is against the manifest weight of the evidence."
"II. The trial court's conviction of defendant for violating Strongsville Codified Ordinance Sections 1252.03 and 1272.07 was not based on sufficient evidence."
 {¶ 2} Having reviewed the record and pertinent law, we vacate Hinton's convictions for violating Strongsville Cod. Ord. 1252.03 and 1272.07. The apposite facts follow.
 {¶ 3} On March 22, 2004, Hinton was cited for violating Strongsville Cod. Ord. sections 1272.07 and 1252.03. The two violations were charged as one minor misdemeanor. Specifically, Strongsville Cod. Ord. 1272.07 governs the posting of accessory signs in residential districts; Strongsville Cod. Ord. 1252.03 sets forth the parameters for "accessory uses" of an individual's residence in the interest of furthering a "home occupation."
 {¶ 4} On October 8, 2004, a bench trial ensued. Strongsville Building Commissioner, Anthony J. Biondillo, received a complaint from a neighbor of Hinton's regarding Hinton's operating an art gallery out of his home located at 19483 Lunn Road in Strongsville.
 {¶ 5} The art gallery is known as the "Molly Gallery" and is in commemoration of Hinton's deceased wife. It has been in operation for approximately four years. The gallery consists of paintings hung in certain areas of Hinton's house. According to Biondillo, the gallery consumes more than twenty-five percent of the floor space in Hinton's home.
 {¶ 6} The artwork displayed is created by Hinton and other local artists. Hinton shows approximately fifty paintings in each exhibit. Different art shows are presented approximately every four weeks. The operating hours for the gallery are from 10:00 a.m. to 7:00 p.m. on Fridays, Saturdays, and Mondays.
 {¶ 7} Approximately forty people attend the openings of the various art exhibits. After the opening, approximately ten people a week visit the gallery. The church adjacent to Hinton's property has agreed to allow patrons of the gallery to use its lot when overflow parking is needed.
 {¶ 8} The artists pay Hinton five dollars to exhibit a painting. Some of the artwork is offered for sale to patrons. Hinton, however, does not receive a profit from the sale of the other artists' paintings. Instead, Hinton gives the artist's phone number to the interested party and the transaction is conducted off the premises. Hinton requires the artist to pay a 10% commission to the Dave Thomas Foundation, a charity that promotes the adoption of children.
 {¶ 9} Biondillo observed numerous signs advertising the "Molly Gallery" in Hinton's front yard and affixed to his mailbox. Biondillo stated the mailbox sign and the sign affixed to the house did not violate the code; however, he stated a large sign advertising an upcoming art show was in violation due to its size. Hinton removed the offending sign prior to receiving the official notification that the sign violated the code; thus, Biondillo conceded the sign was no longer an issue.
 {¶ 10} The "Molly Gallery" website lists the art center's functions, including outdoor craft shows, garden parties, garden club lunches, seminars, retreats, wedding photography sessions, and small wedding receptions, with an accompanying price schedule. Hinton, however, has since closed the website due to inaccuracies.
 {¶ 11} The trial court found Hinton violated both ordinances and imposed a fine of one hundred dollars, which Hinton paid. Hinton now appeals.[1]
 SUFFICIENCY OF THE EVIDENCE AND MANIFEST WEIGHT {¶ 12} In his first and second assigned errors, Hinton argues his convictions for violating Strongsville Cod. Ord. sections 1252.03 and 1272.07 were not supported by sufficient evidence and were against the manifest weight of the evidence.
 {¶ 13} The standard of review with regard to the sufficiency of evidence is set forth in State v. Bridgeman:[2]
"Pursuant to Criminal Rule 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."[3]
 {¶ 14} Bridgeman must be interpreted in light of the sufficiency test outlined in State v. Jenks,[4] in which the Ohio Supreme Court held:
"An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence submitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (Jackson v. Virginia [1979], 443 U.S. 307,99 S.Ct. 2781, 61 L.Ed.2d 560, followed.)"
 {¶ 15} When the argument is made that the conviction is against the manifest weight of the evidence, the appellate court is obliged to consider the weight of the evidence, not its mere legal sufficiency. The defendant has a heavy burden in overcoming the fact finder's verdict. As the Ohio Supreme Court held, inState v. Thompkins:[5]
"Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.' Blacks, supra, at 1594.
"* * * The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."
 {¶ 16} We conclude the trial court erred by finding Hinton's sign violated Strongsville Cod. Ord. 1272.07. The building commissioner testified that Hinton removed the offending sign prior to receiving the official notification of the violation. The notification required Hinton to correct the cited violation within seven days of receiving the notice in order to avoid prosecution. The commissioner admitted the two remaining signs did not violate Strongsville Cod. Ord. 1272.07. Therefore, because Hinton removed the offending sign prior to the notification date, the trial court erred by not dismissing the charges stemming from that sign.
 {¶ 17} We also conclude that the evidence does not support Hinton's conviction for violating Strongsville Cod. Ord. 1252.03, Accessory Uses. The City argues the following sections were violated:
"(c) Home Occupants. Gainful home occupations may be permitted in certain Residential Districts including home crafts such as baking, dressmaking, millinery, weaving, home decorating, services such as repairing furniture and radios, sharpening tools; office space of businesses or services such as real estate, selling or taking order for merchandise, contracting work, provided:
"1) Only members of the family residing within the dwellings shall work therein;
"2) The occupation is conducted wholly within a building and the space used for production and sale does not occupy more than twenty-five percent of the floor area of a detached building;
"3) No merchandise shall be sold except that which is produced or processed on the premises;
"* * *
"6) Trucks or other mobile equipment shall not be parked overnight in driveways or open yards, and the occupations do not attract any greater number of automobiles to the premises than is permitted in accordance with Section 1270.05 of the Zoning Code."
 {¶ 18} We conclude Hinton's gallery does not violate (c)(1) or (3). Hinton only sold his own art pieces at the gallery. This is permissible under the above provisions. Although other artists displayed their art works at the home, there is no evidence that Hinton sold the pieces at the gallery. Instead, interested buyers were given the artist's telephone number and the sale was arranged with the artist. Therefore, Hinton merely displayed the work of other artists and did not partake in the sale of the items.
 {¶ 19} "It is well-settled that as zoning regulations deprive the owners of real property of certain uses thereof, and are in derogation of the common law, they must be strictly construed and not extended by implication."[6] Simply displaying the art for others to view does not constitute a violation under the language of the ordinance. We refuse to extend the prohibition against the sale of products not manufactured by the resident to include a prohibition against "displaying merchandise" not manufactured by the resident.
 {¶ 20} We agree with Hinton that the restriction set forth in Strongsville Cod. Ord. 1252.03(c)(2), which limits the display area to twenty-five percent of the floor space, does not apply to the gallery. The limitation set forth in Strongsville Cod. Ord. 1252.03(c)(2) specifically applies to a "detached building." Most likely, the restriction is to prevent residents from erecting structures for the primary purpose of housing a business. It is undisputed that Hinton's gallery is within his home.
 {¶ 21} Finally, it does not appear that there were any complaints regarding excessive traffic associated with the gallery. Overflow parking was arranged with an adjacent church; therefore, vehicles were not parked in prohibited areas. Thus, there is no evidence to support a conviction pursuant to (c)(6).
 {¶ 22} We conclude Hinton's gallery, in which he only sells his own artwork and displays the work of other artists, does not violate Strongsville's zoning ordinance. Accordingly, Hinton's assigned errors have merit. Hinton's convictions for violating Strongsville Cod. Ord. 1272.07 and 1252.03 are reversed and vacated.
Judgment vacated.
This cause is vacated.
It is, therefore, ordered that said appellant recover of said appellee his costs herein.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
McMonagle, J., concur;
 Calabrese, Jr., J., Dissents (See attached DissentingOpinion.)
[1] When a defendant has paid the fine imposed for a misdemeanor, the appeal is rendered moot. State v. Golston
(1994), 71 Ohio St.3d 224. However, because Hinton will suffer a collateral legal disability by virtue of the fact the charges prevent him from operating the art gallery, we will review the matter under this exception. Id.
[2] (1978), 55 Ohio St.2d 261, syllabus.
[3] See, also, State v. Apanovitch (1987), 33 Ohio St.3d 19,23; State v. Davis (1988), 49 Ohio App.3d 109, 113.
[4] (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
[5] 78 Ohio St.3d 380, 386-387, 1997-Ohio-52.
[6] Van Camp, Sheriff v. Riley, et al, (1984),16 Ohio App.3d 457, citing 10 Ohio Jurisprudence 3d (1979) 343, Buildings, Zoning and Land Controls, Section 142.
DISSENTING OPINION