{¶ 1} Appellant Jason Russell appeals his convictions for rape and kidnapping.[1] He sets forth four assigned errors.[2]
 {¶ 2} Having reviewed the record and pertinent law, we affirm in part, reverse in part and remand for merger of the allied offenses.
 {¶ 3} Russell was indicted for one count each of kidnapping, rape, felonious assault, and domestic violence. The kidnapping, rape, and felonious assault counts included repeat violent offender and prior notice of conviction specifications.
 {¶ 4} Russell waived his right to counsel and proceeded to represent himself at trial.
 Jury Trial {¶ 5} Russell and the victim had dated for approximately eight months. The victim eventually moved in with Russell, who lived in the basement of his father's home. In October 2005, the victim ended her relationship with Russell and moved out. However, on November 4, 2005, she reconsidered her decision and went to Russell's place to make-up.
 {¶ 6} The victim stated that at first they were having a good time. Around 1:00 a.m. she got into bed because she planned on spending the night. She wore a t-shirt and underwear to bed. She said as she laid down to go to sleep, the defendant began accusing her of infidelity. She denied his allegations. As she rolled over with her back to him, he began *Page 3 
choking her from behind and started hitting her calling her a "bitch" and a "ho." He then got on top of her and continued choking her with such force one of her contacts popped out of her eye. While still choking her he penetrated her with his penis. The victim stated she could not breathe and attempted to get him off by pushing him. His father, hearing the argument and the victim's screaming, started kicking at the locked door. Russell then got off the victim and went upstairs.
 {¶ 7} The victim quickly put on her clothes and ran to her daughter's house a half-mile away where she called the police. The responding officer stated that the victim had a bump on her head, but that she did not seem emotionally upset. After obtaining the victim's statement, the officer immediately proceeded to Russell's house.
 {¶ 8} Russell was not at home when the officer arrived. However, Russell's father told the officer that he had heard fighting. He specifically heard the victim yell, "stop hitting me." The father stated he tried to call to his son but he did not respond.
 {¶ 9} After this incident, the victim remained friends with Russell in spite of the fact she was scared of him. Russell was indicted for his actions on March 21, 2006. On April 3, 2006, Russell approached the victim with an affidavit, which he drafted with the help of his new girlfriend. The affidavit retracted the accusations made by the victim to the police. At Russell's prodding, the victim signed it even though according to her, the affidavit was not true. She stated she just wanted to get on with her life and had forgiven Russell. In fact, she *Page 4 
did not want to testify at trial, but was told by the prosecutor she could be charged if she failed to do so.
 {¶ 10} The jury found Russell guilty of kidnapping, rape, and domestic violence, but not guilty of felonious assault. At a bifurcated hearing before the trial court, the court determined Russell was a repeat violent offender and noted the notice of prior conviction specification was satisfied because he had a prior conviction for voluntary manslaughter. The trial court sentenced him to a total of thirty years in prison.
 Allied Offenses {¶ 11} In his first assigned error, Russell argues that the trial court erred when it failed to merge the kidnapping and rape counts as allied offenses because the kidnapping was incidental to the rape. The State conceded this assigned error at oral argument.
 {¶ 12} Accordingly, Russell's first assigned error is sustained and the matter remanded for the sole purpose of merging the kidnapping and rape convictions for sentencing purposes.
 Insufficient Evidence and Manifest Weight {¶ 13} We will address Russell's second, third, and fourth assigned errors together because they all concern whether the State presented sufficient evidence to support Russell's rape and kidnapping convictions and whether the victim was credible. In that we have *Page 5 
determined that the kidnapping conviction lacks a separate animus, we consider these assigned errors only with regard to the rape conviction.[3]
 {¶ 14} The sufficiency of the evidence standard of review is set forth in State v. Bridgeman[4] as follows:
 "Pursuant to Criminal Rule 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."[5]
 {¶ 15} Bridgeman must be interpreted in light of the sufficiency test outlined in State v. Jenks, [6] in which the Ohio Supreme Court held:
 "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence submitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (Jackson v. Virginia (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, followed.)" *Page 6 
 {¶ 16} We conclude there was sufficient evidence to support the rape conviction. The victim testified that Russell jumped on top of her and while holding her down, he penetrated her vagina. The doctor who performed the rape kit testified that there was no physical signs of trauma to the vagina, but explained that this did not mean that rape did not occur. Moreover, there was evidence that Russell had penetrated her because semen, matching his DNA, was recovered from the victim. The victim had testified the rape was the only sexual conduct that occurred between her and the victim.
 {¶ 17} Thus, as Russell also concluded, the determinative issue is whether the victim was credible, which is an argument that goes to the manifest weight of the evidence. In State v. Wilson, [7] the Ohio Supreme Court recently addressed the standard of review for a criminal manifest weight challenge, as follows:
 "The criminal manifest-weight-of-the-evidence standard was explained in State v. Thompkins (1997), 78 Ohio St.3d 380, 1997 Ohio 52, 678 N.E.2d 541. In Thompkins, the court distinguished between sufficiency of the evidence and manifest weight of the evidence, finding that these concepts differ both qualitatively and quantitatively. Id. at 386, 678 N.E.2d 541. The court held that sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, but weight of the evidence addresses the evidence's effect of inducing belief. Id. at 386-387, 678 N.E.2d 541. In other words, a reviewing court asks whose evidence is more persuasive — the state's or the defendant's? We went on to hold that although there may be sufficient evidence to support a judgment, it could nevertheless be against the manifest weight of the evidence. Id. at 387, 678 N.E.2d 541. `When a court of appeals reverses a judgment of a trial court on the basis that the verdict *Page 7 is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony.' Id. at 387, 678 N.E.2d 541, citing Tibbs v. Florida (1982), 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652."
 {¶ 18} However, an appellate court may not merely substitute its view for that of the jury, but must find that "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."[8] Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction."[9]
 {¶ 19} In attacking the victim's credibility, Russell focuses on the fact that the victim had signed an affidavit recanting her statement to police. However, the victim explained at trial that the rape did occur and she simply signed the affidavit because she wanted to "move on" and put the incident behind her. She also stated she had forgiven Russell. Simply because the victim wants to "move on" and has forgiven her attacker, does not mean the rape never occurred. Thus, the jury had a basis upon which it could weigh the affidavit against her testimony at trial. Obviously, they believed the victim's explanation of the affidavit. Accordingly, Russell's second, third, and fourth assigned errors are overruled.
Judgment affirmed in part,
reversed in *Page 8 
part and remanded for merger of the allied offenses.
It is ordered that appellant and appellee share the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 MELODY J. STEWART, J., and ANN DYKE, J., CONCUR *Page 9 
 APPENDIX
ASSIGNMENTS OF ERROR "I. The trial court erred in entering a conviction and consecutive sentence for kidnapping where it constituted an allied offense of similar import to the rape offense."
 "II. The trial court erred in denying appellant's Criminal Rule 29 motion for acquittal when there was insufficient evidence to prove the elements of rape."
 "III. The trial court erred in denying appellant's Criminal Rule 29 motion for acquittal when there was insufficient evidence to prove the elements of kidnapping."
 "IV. The appellant's convictions for rape and kidnapping were against the manifest weight of the evidence."
[1] The jury also convicted Russell for domestic violence. However, he does not raise any arguments regarding the domestic violence conviction.
[2] See appendix.
[3] State v. Logan (1979), 60 Ohio St.2d 126, at syllabus ("where the restraint or movement of the victim is merely incidental to a separate underlying crime, there exists no separate animus sufficient to sustain separate convictions"); cf. State v. Lipscomb, Cuyahoga App. No. 88831,2007-Ohio-5945, at ¶ 22.
[4] (1978), 55 Ohio St.2d 261, syllabus.
[5] See, also, State v. Apanovitch (1987), 33 Ohio St.3d 19, 23;State v. Davis (1988), 49 Ohio App.3d 109, 113.
[6] (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
[7] 113 Ohio St.3d 382, 2007-Ohio-2202.
[8] State v. Thompkins, supra at 387.
[9] Id. *Page 1