[Cite as *State v. Welch*, 2015-Ohio-3203.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

STATE OF OHIO

     Plaintiff-Appellee

-vs-

STEPHAN M. WELCH

     Defendant-Appellant

JUDGES:
Hon. William B. Hoffman, P.J.
Hon. John W. Wise, J.
Hon. Patricia A. Delaney, J.

Case No. 14 CAA 09 0061

O P I N I O N

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Appeal from the Delaware County Court of Common Pleas, Case No. 14 CRI 03 0123 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | August 7, 2015 |
| APPEARANCES: | |

For Plaintiff-Appellee

For Defendant-Appellant

CAROL HAMILTON O'BRIEN
Delaware County Prosecuting Attorney
MARK C. SLEEPER
Assistant Prosecuting Attorney
140 N. Sandusky St., 3rd Floor
Delaware, Ohio 43015

ELIZABETH E. OSORIO
The Law Offices of Brian Jones
2211 U.S. Highway 23 North
Delaware, Ohio 43015

*Hoffman, P.J.*

{¶1}   Defendant-appellant Stephan M. Welch appeals his conviction entered by the Delaware County Court of Common Pleas.  Plaintiff-appellee is the state of Ohio.

STATEMENT OF THE FACTS AND CASE

{¶2}   In December, 2014, Appellant purchased a MacBook Pro laptop from a friend, Matthew Fleming.  Appellant purchased the new laptop for $300.00. Appellant testified he asked his friend if "there was anything funny" about the computer, and was told there was not.  Later Appellant posted the computer for sale on Craigslist.  He did not "wipe" the computer, or remove any communications or identifiers from it.  Appellant then decided to pawn the computer at Cashland in Delaware, Ohio.

{¶3}   Seven years prior, Appellant had bought an iPhone from a friend, which had been stolen property.  Appellant had entered a plea of guilty to a misdemeanor charge of receiving stolen property.  At the time of Appellant's conviction herein, Appellant was undergoing treatment in a program of Intervention in Lieu of Conviction for a drug charge.

{¶4}   The MacBook Pro laptop at issue herein belonged to Gregory Wolfson, who loaned the laptop to Eric Goodman.  The laptop was stolen from Goodman's car. Goodman was able to identify the laptop from the Cashland pawn shop.  Wolfson testified he paid $1,800 for the laptop at the time of purchase.

{¶5}   Detective Ryan Pentz of the Powell Police Department testified at trial he received a report of a stolen laptop.  He entered the serial number for the laptop into LEADS online which connected him to activity at area pawn shops.

**{¶6}** Detective Pentz later received information a laptop with a serial number matching the stolen MacBook Pro had been pawned at Cashland in Delaware, Ohio. He went to the store, and confirmed the serial number matched the laptop information provided. Both Wolfson and Goodman later confirmed the laptop at Cashland was the stolen laptop.

**{¶7}** Detective Pentz interviewed Appellant who admitted to pawning the laptop. Appellant stated he did not know where the laptop came from and did not ask Fleming at the time he purchased it. He admitted he eventually learned the laptop was worth $1,300 brand new.

**{¶8}** Amber Munday, an employee of the Cashland pawn shop, testified as to the serial number and other identifying features of the laptop. She testified the pawn shop paid Appellant $650.00 for the computer.

**{¶9}** On March 28, 2014, Appellant was charged with one count of receiving stolen property, in violation of R.C. 2913.51(A), a felony of the fifth degree. The indictment alleged the value of the property stolen was greater than $1,000.00, but less than $7,500.00.

**{¶10}** On July 21, 2014, the matter proceeded to a jury trial. Following the presentation of evidence, the jury returned a finding of guilty. The trial court sentenced Appellant to a period of three years of community control, including court costs and fees, as well as forty-five days in jail with release for work purposes.

**{¶11}** Appellant appeals, assigning as error:

**{¶12}** "I. MR. WELCH'S CONVICTION OF RECEIVING STOLEN PROPERTY WAS BASED UPON INSUFFICIENT EVIDENCE AS THE STATE FAILED TO PROVE

BEYOND A REASONABLE DOUBT THAT MR. WELCH KNEW OR REASONABLY SHOULD HAVE KNOWN THE LAPTOP WAS STOLEN AND FURTHER FAILED TO PROVE THE LAPTOP AT ISSUE WAS STOLEN, THEREBY VIOLATING MR. WELCH'S RIGHTS UNDER THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT AND ARTICLE 1, SECTION 16 OF THE OHIO CONSTITUTION.

{¶13} "II. MR. WELCH'S CONVICTION FOR RECEIVING STOLEN PROPERTY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE RESULTING IN A MISCARRIAGE OF JUSTICE, IN VIOLATION OF SECTION 3, ARTICLE IV OF THE OHIO CONSTITUTION, BECAUSE THE MANIFEST WEIGHT OF THE EVIDENCE ESTABLISHED MR. WELCH'S INQUIRIES REGARDING THE LAPTOP WERE REASONABLE UNDER THE CIRCUMSTANCES.

{¶14} "III. TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE WHEN COUNSEL FAILED TO SUBPOENA A WITNESS NECESSARY TO THE DEFENSE AND FURTHER FAILED TO OBJECT TO THE STATE'S FAILURE TO ESTABLISH BEYOND A REASONABLE DOUBT THAT THE LAPTOP AT ISSUE WAS STOLEN."

I. and II.

{¶15} Appellant's first and second assignments of error raise common and interrelated issues; therefore, we will address the arguments together.

{¶16} Our standard of reviewing a claim a verdict was not supported by sufficient evidence is to examine the evidence presented at trial to determine whether the evidence, if believed, would convince the average mind of the accused's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the

essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492.

{¶17} The Supreme Court has explained the distinction between claims of sufficiency of the evidence and manifest weight. Sufficiency of the evidence is a question for the trial court to determine whether the State has met its burden to produce evidence on each element of the crime charged, sufficient for the matter to be submitted to the jury.

{¶18} Manifest weight of the evidence claims concern the amount of evidence offered in support of one side of the case, and is a jury question. We must determine whether the jury, in interpreting the facts, so lost its way that its verdict results in a manifest miscarriage of justice. *State v. Thompkins* (1997), 78 Ohio St.3d 387, citations deleted. On review for manifest weight, a reviewing court is "to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment." *State v. Thompkins,* 78 Ohio St.3d 380, 387, 678 N.E.2d 541, 1997-Ohio-52, citing *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. Because the trier of fact is in a better position to observe the witnesses' demeanor and weight their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. *State v. DeHass* (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, syllabus 1.

{¶19} Appellant was convicted of receiving stolen property, in violation of R.C. 2913.51(A), which reads, "(A) No person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense."

{¶20} The criteria for whether a defendant knew or should have known property has been stolen was set forth in *State v. Davis*, 49 Ohio App.3d 109, 550 N.E.2d 966 (1988). The factors include: 1) the defendant's unexplained possession of the merchandise; 2) the nature of the merchandise; 3) the frequency with which such merchandise is stolen; 4) the nature of the defendant's commercial activities; and 5) the relatively limited time between the theft and the recovery of the merchandise. *Id.* at 112. "Knowledge that property is stolen may be inferred from circumstantial evidence." *State v. Beasley* (Feb. 21, 1991) Cuyahoga App. No. 58054.

{¶21} Gregory Wolfson testified at trial he paid $1,800 for the laptop. He lent the computer to Eric Goodman to use for work purposes, and the computer was stolen from the back of Goodman's car. They contacted the Powell Police Department.

{¶22} Amber Munday testified at trial on December 19, 2013, Appellant brought in a MacBook Pro and pawned it. She testified as to the serial number and the amount of the transaction being $650.00. Tr. at 96-97.

{¶23} Detective Pentz testified upon learning of the theft of the laptop from the car, he entered the serial number into LEADS online. Upon learning of a match on LEADS at Cashland in Delaware, he went to the store and confirmed the serial numbers matched. Tr. at 110. After confirming it was Wolfson's laptop, he contacted him and let him know of the procedures to pick up the computer.

**{¶24}** Detective Pentz learned Appellant had pawned the laptop, and he obtained a copy of the pawn slip and the surveillance video. He also checked Appellant's information through the BMV. Tr. at 110-111.

**{¶25}** Wolfson testified upon having the laptop returned, he found other information on the computer in addition to his personal information. He immediately let the detectives working on the case know, and they retrieved the information. Tr. At 88. Detective Pentz testified he found numerous emails, messages and photographs on the computer belonging to Appellant, including pictures of the computer itself. Detective Pentz obtained information relating to the Craigslist advertisement as well as where Appellant was trying to sell the computer. Tr. at 114. One of the ads lists a MacBook Pro computer for sale at $1,299, new plus tax. Tr. at 116.

**{¶26}** Detective Pentz testified Appellant was not cooperative at first, but later stated he purchased the computer for $300.00 from a Matt Fleming. He would not offer any information on Fleming.

**{¶27}** Appellant testified herein,

Q. And nowhere in there after he texted you that did you ask him where he got it or anything; is that right?

A. Right.

Q. All you said is that you wanted it?

A. Yeah.

Q. Showing you State's Exhibit 2. You took those photographs, right?

A. Yes.

Q. And those are photographs you took with your phone in order to sell this laptop on Craig's List?

A. Yes.

Q. State's Exhibit 3. That's the Craig's List ad that you posted; is that correct?

A. Yes.

Q. And you listed a purchase price of $950, right?

A. Yes.

Q. Which by your own estimation is three times what you paid for it; is that correct?

A. Yes.

Q. You also then put in the description that you had a 13-inch MacBook Pro that was purchased in May of this year; is that right?

A. Yes.

Q. And you indicated the software that was on it; is that right?

A. Yes.

Q. And you said that it was $1,299 new plus tax; is that right?

A. Yes.

Q. So at the time you went to sell the laptop, you knew you were in the possession of at least a $1,300 laptop that you had purchased for $300; is that right?

A. Yes.

Q. After you found out how much it was worth and how little it had been sold to you for, did you go back to Matt Fleming and ask him where he got it from?

A. No.

Q. Because, again, you didn't care where he got it from; is that right?

A. Yeah.

Q. Showing you State's Exhibit 4. Top left corner there's some instant messaging back and forth. You remember using the computer to do instant messaging?

A. Yes.

Q. So you were aware of how the laptop worked enough to set it up with your account to start using your instant messenger?

A. Yes.

Q. The bottom left, do you recall being asked by potential purchasers from Craig's List about the specifications of the laptop?

A. Yes.

Q. And you were able to provide that information to them; is that correct?

A. It's on the laptop.

Q. So you knew enough about the laptop in order to get on to it and locate that information in order to be able to provide it to a potential buyer?

A. It's pretty simple to find.

Q. Okay. You tried unsuccessfully to sell the laptop on Craig's List; is that right?

A. I had people call, I just - - honestly, I didn't really want to sell it. I was kinda desperate. I wanted some money for Christmas, but I didn't really want to get rid of it all the way.

Q. So then you then took it to the pawnshop - -

A. Yes.

Q. - - is that right?

A. Yes.

Q. Now, you said in the past you have a prior conviction for Receiving Stolen Property, right?

A. Yes.

Q. And in that case it was an iPhone that you purchased from a friend; is that right?

A. Yes.

Q. And it was your testimony today that you had no idea that that phone was stolen at the time you purchased it?

A. Right.

Q. And back then you didn't ask where it came from; is that right?

A. Right.

Q. And if I'm not mistaken, then you said on direct examination that because of that you always want to ask where stuff comes from; is that right?

A. I always want to ask whether or not it's stolen or what kind - -

Q. Were you not asked the question whether or not you always want to ask where property comes from before you purchase it, were you asked that question; do you recall?

A. I don't recall.

Q. If you were asked that question, would your answer have been, yes, you always do want to know where stuff comes from?

A. I generally like to.

Q. But it's true that in this case you didn't bother to ask the question where it came from; is that correct?

A. Yes.

Tr. at 148-152.

**{¶28}** Upon review of the testimony, we find there was competent, credible evidence presented for the jury to find Appellant guilty of the charge of receiving stolen property, and Appellant's conviction is not against the manifest weight nor based upon insufficient evidence. The jury had competent credible evidence to find Appellant knew or had reasonable cause to believe the property had been stolen.

**{¶29}** The first and second assignments of error are overruled.

III.

**{¶30}** In the third assigned error, Appellant maintains he was denied effective assistance of trial counsel.

**{¶31}** To succeed on a claim of ineffectiveness, a defendant must satisfy a two-prong test. Initially, a defendant must show that trial counsel acted incompetently. *See,*

*Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In assessing such claims, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Id.* at 689, 104 S.Ct. 2052, citing *Michel v. Louisiana,* 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955).

**{¶32}** "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052. The question is whether counsel acted "outside the wide range of professionally competent assistance." *Id.* at 690, 104 S.Ct. 2052.

**{¶33}** Even if a defendant shows that counsel was incompetent, the defendant must then satisfy the second prong of the *Strickland* test. Under this "actual prejudice" prong, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052.

**{¶34}** The United States Supreme Court and the Ohio Supreme Court have held a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Bradley,* supra at 143, quoting *Strickland* at 697, 104 S.Ct. 2052. Accordingly, we will direct our attention to the second prong of the *Strickland* test.

**{¶35}** Appellant maintains counsel failed to subpoena a witness necessary to the defense. Specifically, Appellant argues counsel's failure to subpoena an Apple

representative resulted in grave prejudice to Appellant as Appellant could not demonstrate the laptop was not registered.

**{¶36}** Upon review of the evidence and the testimony presented at trial, we find a reasonable probability does not exist the outcome of the case would have been different had this evidence been presented. Appellant has not demonstrated prejudice as a result of Appellant's alleged error.

**{¶37}** Additionally, Appellant asserts trial counsel did not argue the State failed to establish a theft offense. Upon review of the trial testimony, the evidence presented adequately establishes the laptop was lent to Goodman and was stolen from his vehicle. Detective Pentz tracked the computer's serial number to the pawn shop, and learned Appellant had pawned the laptop at Cashland. Wolfson and Goodman both confirmed the laptop at Cashland had the same serial number and identifying markers as the stolen laptop. Accordingly, there was sufficient evidence presented at trial to establish a theft offense.

**{¶38}** Appellant has not demonstrated prejudice as a result of counsel's alleged failure.

**{¶39}** The third assigned error is overruled.

{¶40} Appellant's conviction in the Delaware County Court of Common Pleas is affirmed.

By: Hoffman, P.J.

Wise, J.  and

Delaney, J. concur